Glenn S. MARTIN and Carol D.
Martin, Appellants,

v.

CROWLEY, WADE AND MILSTEAD,
INC., Respondent.

No. 67173.

Supreme Court of Missouri,
En Banc.

Dec. 17, 1985.

David E. Martin, Independence, for appellants.

Joe F. Willerth, Lawrence E. Tittle, Independence, for respondent.

RENDLEN, Judge.

Plaintiffs by their petition for damages charged defendant, a professional engineering, architectural, and land-surveying corporation, with negligence in the survey of a residential lot owned by plaintiffs which they intended as a home construction site. The trial court sustained defendant's motion to dismiss on the ground the cause of action was barred by § 516.120, RSMo 1978, the applicable statute of limitations. Following reversal in the Western District we granted transfer and now determine the cause as though on original appeal, Mo. Const. art. V, § 10, and we too reverse judgment of the trial court.

Reviewing the dismissal of plaintiffs' petition, we allow the pleading its broadest intendment, treat all facts alleged as true, and construe the allegations favorably to the plaintiffs. *Shapiro v. Columbia Union National Bank & Trust Co.*, 576 S.W.2d 310, 312 (Mo. banc 1978), *cert. denied*, 444 U.S. 831, 100 S.Ct. 60, 62 L.Ed.2d 40 (1979).

In October, 1973, plaintiffs hired defendant to survey their lot and to plot the location of the home they contemplated building. Plaintiffs advised defendant they wanted their house set back fifty feet from the front line and twelve feet east of the west property line. Later that month defendant prepared the plot plan and staked the lot lines, as well as the locations for the intended house. Thereafter plaintiffs constructed their home, placing it in the location delineated by the stakes and according to the plot plan.

In May, 1981, plaintiffs discovered that their house, while built where defendant

specified, was located only six feet from the true west property line rather than twelve.[1] The fair market value of the real estate is less than it would have been had defendant's survey not been in error. In August, 1983, plaintiffs filed this petition for damages alleging that the damages incurred through mislocation of the house were a direct and proximate result of defendant's negligence in surveying and plotting the land.

Plaintiffs contend that the trial court erred in sustaining defendant's motion to dismiss because they filed their petition within five years of May, 1981 which, they allege, was the time the statute of limitations commenced running. The parties agree that § 516.120, RSMo 1978, is the applicable statute, but the question is, when did the running of its five-year limitation period commence?

It is axiomatic that the five-year statute of limitations begins running when the cause of action accrued. Section 516.100, RSMo 1978. That section further provides in pertinent part:

> [T]he cause of action shall not be deemed to accrue when the wrong is done or the technical breach of contract or duty occurs, but when the damage resulting therefrom is *sustained and* is *capable of ascertainment,* and, if more than one item of damage, then the last item, so that all resulting damage may be recovered, and full and complete relief obtained.

*Id.* (emphasis added).

■ As this Court has previously recognized, the mere occurrence of an injury itself does not necessarily coincide with the accrual of a cause of action. *Dixon v. Shafton,* 649 S.W.2d 435 (Mo. banc 1983); *Krug v. Sterling Drug, Inc.,* 416 S.W.2d 143 (Mo.1967); *see also Anderson v. Griffin, Dysart, Taylor, Penner & Lay, P.C.,*

684 S.W.2d 858 (Mo.App.1984); *Thorne v. Johnson,* 483 S.W.2d 658 (Mo.App.1972). Such a reading would deprive the additional language "and is capable of ascertainment" of any meaning. The legislature's amendment, in 1919, of what is now § 516.-100 was intended to state

> in the plainest of words that the cause of action should no longer be deemed to accrue "when the wrong is done or the technical breach of contract or duty occurs", as had been held in the *Rankin [v. Schaeffer,* 4 Mo.App. 108 (1877) ] and *Schade [v. Gehner,* 133 Mo. 252, 34 S.W. 576 (1896) ] decisions.

*Thorne,* 483 S.W.2d at 661.

■ The facts alleged do not support the trial court's reluctant finding[2] that plaintiffs' damages were ascertainable more than five years prior to filing of this cause. That finding stems from defendant's assertion that the statute of limitations commenced running in October, 1973. In support of its contention, defendant argues that the defect complained of was visible and ascertainable by an easy inspection of the land or by asking a neighbor. We reject such a proposition to the extent that it would impose upon plaintiffs an automatic, affirmative duty to double check the services provided by a professional expert.

■ We hold, that from the pleadings, involving a layman/expert relationship, nothing indicates plaintiffs knew or should have known of any reason, until May, 1981, to question defendant's work. Under these circumstances, plaintiffs had no duty to double check defendant's work. Hence under the facts alleged the damages were not "capable of ascertainment" in October, 1973.

Our holding is consistent with results in previous cases. *See, e.g., Dixon,* 649 S.W.2d 435; *Jepson v. Stubbs,* 555 S.W.2d

---

1. It appears from the briefs that plaintiffs learned of the error from a resurvey obtained to settle a boundary dispute with a neighbor.

2. The trial judge, in his order and memorandum, stated that he interpreted "capable of ascertainment," § 516.100, RSMo 1978, to mean

that "a plaintiff doesn't lose his cause of action if he did the best he could, judging him as a reasonable person." But he further concluded that this Court, in *Jepson v. Stubbs,* 555 S.W.2d 307 (Mo. banc 1977), held otherwise and that *Jepson* required dismissal of plaintiffs' petition.

307 (Mo. banc 1977); *Anderson*, 684 S.W.2d 858; *Thorne*, 483 S.W.2d 658. In *Thorne*, the Court of Appeals reversed a trial court's order dismissing claimants' action because it was barred by the five-year statute of limitations. There claimants, in 1968, filed a petition against an abstract company based upon the latter's negligent certification of an abstract. The abstract, delivered under certification in 1961, omitted a 1957 deed. This mistake was not discovered by claimants until 1968. The Court of Appeals held that the mistake was not ascertainable prior to 1968 simply because the deed had been recorded in 1957, stating that "[i]t would be absurd to lay down as a legal requirement that these parties, in addition to hiring a professional abstractor, should also have to make their own independent laymen's investigation to ascertain whether their professional agent had done its job properly." *Id.* at 663.

Similarly in *Anderson* the Court of Appeals reversed a trial court's order dismissing Anderson's action for malpractice against his attorney because it was barred by the five-year statute of limitations. In his petition, Anderson alleged that he had suffered a default judgment on account of his attorney's failure to dismiss an earlier action per his request, and on account of the attorney's subsequent inattention to a counterclaim filed against Anderson. The Court of Appeals held that the statute of limitations commenced running in October, 1981, when Anderson first learned of the default judgment. The Court of Appeals rejected attorney's argument that the statute of limitations commenced running on October 30, 1975, when the default judgment was entered. While defendant correctly observed that the default judgment was a matter of public record, and thus the damages were literally capable of ascertainment, as of October 30, 1975, the Court of Appeals stated that "[a]s a layman, Anderson cannot be expected to double check every act (or failure to act) of his attorney." *Anderson*, 684 S.W.2d at 861.

Additionally, in *Dixon* we held that the five-year statute of limitations barred a legal malpractice action where claimants learned of the malpractice and retained independent counsel more than five years prior to filing of the action.

Contrary to defendant's argument, and the trial court's order, *Jepson* does not require us to affirm the dismissal of plaintiffs' action. There we held that the five-year statute of limitations barred a legal malpractice action. Jepson had consulted an attorney who advised that he had no defense to pending charges of Selective Service violations. Relying upon that advice, Jepson pleaded guilty on August 1, 1967, and was sentenced to prison. On March 4, 1969, Jepson was placed on parole and was released from parole September 7, 1970. On March 12, 1973, Jepson, consulting with another attorney, first learned that he had a possible defense, and in February, 1975, the federal court set aside Jepson's conviction. Jepson filed his legal malpractice action on August 18, 1975. Finding the statute of limitations to have been tolled during Jepson's imprisonment, we held that the statute of limitations commenced running on March 4, 1969. Unlike the present case, the very consequences of defendant's services, known to plaintiff, provided sufficient reason for plaintiff in *Jepson* to question defendant's work after plaintiff's release from prison whereafter he had unfettered opportunity to pursue post-conviction remedies or other relief.

The facts before us are insufficient to find that the statute of limitations commenced running more than five years prior to filing of this cause. It may well be that there were facts, as yet undeveloped, which should have at least put plaintiffs on notice of defendant's error prior to May, 1981. Such facts if they exist can be developed during discovery or trial.

The judgment is reversed and the cause remanded to the trial court with direction to reinstate plaintiffs' petition.

*REVERSED AND REMANDED WITH DIRECTIONS.*

HIGGINS, C.J., and BILLINGS, BLACKMAR, DONNELLY and ROBERTSON, JJ., concur.

WELLIVER, J., concurs in result in separate opinion filed.

WELLIVER, Judge, concurring.

I concur in result.

I would re-transfer the case as improvidently transferred, or, in the alternative, I would adopt the reasoning set forth in the opinion of the court of appeals.[1] The principal opinion, in an effort to be overly protective of *Dixon v. Shafton*, 649 S.W.2d 435 (Mo. banc 1983), seeks to deal with the problem in terms of a "know or should have known" test. The statute, § 516.100, speaks in terms of damages being "capable of ascertainment." Little or no guidance is given to the lawyers of the state by enunciation of such a test. To say that the test is whether one "knew or should have known" is but to invite two different results by two different courts on similar factual situations and to add to the already disasterous state of confusion. *Compare Jepson v. Stubbs*, 555 S.W.2d 307 (Mo. banc 1977) *and Chemical Workers Basic Union, Local No. 1744 v. Arnold Savings Bank*, 411 S.W.2d 159, 163–65 (Mo. banc 1966) *and Brower v. Davidson, Deckert, Schutter, and Glassman, P.C.*, 686 S.W.2d 1 (Mo. App.1984) *with Krug v. Sterling Drug, Inc.*, 416 S.W.2d 143 (Mo.1967) *and Anderson v. Griffin, Dysart, Taylor, Penner & Lay, P.C.* 684 S.W.2d 858 (Mo.App.1984) *and Thorne v. Johnson*, 483 S.W.2d 658 (Mo.App.1972). It is not clear under the principal opinion what the plaintiff must know or should have known. The test could either refer to the *fact* that the expert allegedly rendered negligent services or refer to the *fact* that the plaintiff incurred certain damages. In attempting to harmonize prior cases, the principal opinion obfuscates this distinction.

When dealing with recognized experts, the gut question is whether or not laymen will be permitted to rely on a recognized expert, or, will the law require each person employing a recognized expert to hire a second expert to check on the services of the first expert, otherwise to be barred by the statute if more than five years has passed before discovery of the original expert's error and filing of suit. I would hold

that a party should not be forced to hire the second expert to insure that the services provided by the first professional expert were free from negligence. Unless it can be shown that the layman had actual notice that the services rendered were done negligently, he or she should be able to rely upon that expert's services until they discover the alleged wrong. Only until such time can the damages be "capable of ascertainment." *See generally* Davis, Tort Liability and the Statute of Limitations, 33 Mo.L.Rev. 171, 188 (1968).

Neither the principal opinion nor the court of appeals opinion mentions *Brower v. Davidson, Deckert, Schutter, supra.* *Brower* involved employment of attorneys who made an untimely distribution of assets in a tax matter resulting in the assessment of a tax deficiency. Apparently with assurances that they would succeed in reversing the assessment, the attorneys continued to represent the plaintiffs (clients) on an administrative appeal of the matter for a substantial portion of the 5 years and 3 months prior to plaintiffs' filing suit against the attorneys. To the extent that we transferred and heard the matter before retransferring the cause for issuance of the court of appeals opinion, this constitutes our latest prior position on the matter. The Court in effect held that, at least as to attorneys, the client knew or should have known of the lawyers negligence. Clarification of the law in this area in my opinion requires specific overruling of *Brower*, otherwise we have but substituted Supreme Court created confusion for the confusion so long existing among our courts of appeals.

## APPENDIX

"This case is presented on appeal by plaintiffs below from a judgment dismissing their petition for damages. That judgment sustained a motion by defendant to dismiss on the ground that the cause of action was barred by the statute of limitations. The question for decision is whether

1. See Appendix.

the period of limitation continued to run during the time an alleged surveying error made by defendant remained undiscovered.

The facts of the controversy are drawn from plaintiffs' petition. We treat all facts there alleged to be true, construe the allegations favorably to plaintiffs and allow the pleadings their broadest intendment. *Best v. Schoemehl*, 652 S.W.2d 740 (Mo. App.1983). So qualified, the pertinent facts are as follow.

Plaintiffs owned an unimproved vacant lot in Independence, Missouri on which they contemplated building a residence. They employed defendant, who operates a business of licensed engineers, architects and surveyors, to survey the lot, locate the place for construction of the house and stake the ground accordingly. Defendant was instructed that the building should be set back fifty feet from the front property line and no less than twelve feet from the west property line. The defendant prepared the plot plan and staked the locations in October, 1973. Plaintiffs then had the residence built, locating it as shown on the plot plan and as indicated by the stakes.

In May, 1981, plaintiffs discovered for the first time that defendants' survey had been in error and, in fact, the residence was not twelve feet from the lot line but was within six feet thereof. As a result of the close proximity of the house to the property line, the fair market value of the real estate is substantially less than it would have been had the structure been located within the lot boundaries as plaintiffs expected and as the plot plan and survey stakes purported to show. Plaintiffs contend that the mislocation of the house is the direct and proximate result of defendant's negligence in failing to exercise the ordinary knowledge, skill and care of land surveyors.

It is not disputed that an action such as the subject case is controlled by § 516.120, RSMo. 1978 which imposes a five year limit on commencement of suit. It is also evident that plaintiffs' petition filed in 1983 was more than nine years after the rendition of defendant's services as surveyors.

Unless the limitation period was tolled with the provisions of § 516.100, RSMo. 1978, the cause of action, if any, was certainly lost.

The fact that the surveying error was not discovered until May, 1981 is supplied by the petition allegation to this effect. The reason plaintiffs made inquiry then does not appear in the petition but it is supplied in suggestions contained in the briefs. Apparently the cause for a resurvey was a dispute between plaintiffs and their neighbors. The new survey obtained to settle the dispute revealed the error of the first survey and made plaintiffs aware for the first time that their house was not located on the lot as they had assumed. There is neither allegation nor proof of any facts which would have put plaintiffs on notice prior to May, 1981 that the defendant's survey had mislocated the building site.

The issue presented is whether, under the above facts as assumed, the five year statute of limitations commenced to run in October, 1973 when the survey work was done or in May, 1981, when the error was discovered. If plaintiffs are entitled to the benefit of tolling provisions contained in § 516.100, RSMo. 1978, then the applicable date is May, 1981 and the petition was filed in time. The pertinent language of the statute read as follows:

> [T]he cause of action shall not be deemed to accrue when the wrong is done or the technical breach of contract or duty occurs, but when the damage resulting therefrom is sustained and is capable of ascertainment * * *.

The trial judge here was fully cognizant of the issue in the case and perceptively commented on the apparent lack of uniformity in appellate decisions on the subject of when and how the "capable of ascertainment" test is to be applied. The following discussion will seek to offer a basis for adopting the proposition that when the services of an expert are engaged, the customer who employs those services and suffers damage from non-performance or mis-performance will not be barred, on grounds of

the statute of limitations, from asserting a claim merely because a second expert was not employed within the limitation period to discover the act of negligence.

Among modern cases on this subject, one of the more thorough analyses of the issues is found in *Thorne v. Johnson*, 483 S.W.2d 658 (Mo.App.1972). There, Thorne brought a suit against various parties for partition of real estate and other relief. Johnson, as one of the defendants, filed a third party action against Douglass-Stewart Abstract Company on account of their error in omitting a deed to Thorne from the abstract prepared on Johnson's order in connection with his sale of the land to the other defendants. The abstract certification, which was the gravamen of the complaint, had been made more than five years before the third party petition was filed. The abstract company claimed any cause against it on account of the compilation error was barred by the statute of limitations.

The court in its opinion traced the history of § 516.100 to the amendment adopted by the Missouri Legislature in 1919. The language of the statute, quoted above, remains today as it was enacted in 1919 when, as the *Thorne* opinion observes, there was a legislative choice to reverse the harsh consequences of a strict application of the limitation period. In the language of *Thorne*, "[T]he 1919 amendment declares that * * * the cause of action shall be deemed to accrue and limitations shall commence to run only from the time 'when the damage resulting therefrom is sustained and is capable of ascertainment.'" *Id.* at 661–2.

In rejecting the contentions by the abstract company that the complainant's loss, if any, was incurred and the statute should commence to run from the date the abstract fee was paid, the *Thorne* court stated: "To say that a cause of action arose at that point for purposes of the statute of limitations is to return to the ancient rule which held that the cause of action accrued upon the date of the technical breach—the very result which was intended to be

changed by the 1919 amendment to the Missouri Statute of Limitations." The court also responded to the claim that the recorded deed could have been discovered by Johnson if he had checked the records in the office of recorder of deeds, saying, "It would be absurd to lay down as a legal requirement that these parties, in addition to hiring a professional abstractor, should also have to make their own independent laymen's investigation to ascertain whether their professional agent had done its job properly."

The decision in *Thorne v. Johnson, supra,* was not without precedential support at the time it was rendered. In *Krug v. Sterling Drug, Inc.,* 416 S.W.2d 143 (Mo. 1967), the court observed that a person must have some notice of his cause of action, that is, an awareness that another person has committed a legal wrong and that harm may follow, before the statute can begin to run. The *Krug* case involved bodily injury in the form of impairment to plaintiff's vision allegedly caused by a drug manufactured by defendant and consumed by plaintiff as a medication for a condition known as discoid lupus erythematosus. Manifestation of visual difficulty did not become apparent for some eight years after Krug commenced using the drug. The court concluded that under § 516.100, RSMo. 1959, the damage which plaintiff suffered was not capable of ascertainment until objective signs were noticed and that the statute did not run during the earlier period despite the medical evidence that the drug was working its physiological harm throughout.

Availability of § 516.100 to toll the limitation statute in cases of undiscovered wrongs appeared to be well in place under the decision in *Thorne v. Johnson, supra,* until the Supreme Court decided *Jepson v. Stubbs,* 555 S.W.2d 307 (Mo. banc 1977). There Jepson refused to submit to induction into the military service as a draftee. When he was faced with prosecution for violation of the Selective Service Act, he consulted Stubbs, a lawyer. Stubbs informed Jepson he had no defense to the

charge and on Stubbs' advice, Jepson pleaded guilty. After serving time under the sentence, Jepson was released on parole March 4, 1969. Four years later, Jepson consulted another attorney who found a defect in the original induction notice and on motion, Jepson's conviction was ultimately set aside. Jepson then sued Stubbs for malpractice on account of the erroneous advice given in 1967 which induced the guilty plea. He contended that the five year statute of limitations did not commence to run on the claim at least until 1973 when, in consultation with the second lawyer, Jepson learned for the first time that the advice given by Stubbs was incorrect.

It was apparently undisputed that the limitation statute did not run during the time Jepson was in custody serving his sentence. Section 516.170, RSMo. 1969. Thereafter, however, the opinion holds that the statute was not tolled under § 516.100 merely because Jepson was unaware of and had failed to discover the alleged negligence of Stubbs. This result is based on the court's perception of a distinction between two tests for determining when the limitation period commences, the "capable of ascertainment" test and the "discovery" test. The opinion suggests, citing an article by Professor Frederick Davis, 33 *Mo.L. Rev.* 171 (1968), that where the test is "capable of ascertainment," the statute begins to run the moment plaintiff's damages are substantially complete. Under the "discovery" test, the limitation period does not commence until the plaintiff becomes aware that he has been aggrieved. The capable of ascertainment language is that which the legislature has used in § 516.100 and according to the *Jepson* opinion, a discovery test may not be judicially substantiated.

The difficulty with the *Jepson* opinion is that it cites *Thorne v. Johnson,* supra, with apparent approval, as a prior case which used the capable of ascertainment test. In fact, however, *Thorne* more nearly adopts the discovery test, at least to the extent of the plaintiff's entitlement to rely on expert opinion or services without making independent inquiry to verify the integrity of the opinion expressed or the service rendered. Moreover, in both cases cited and in the subject case, the damages are substantially complete when the flawed service or opinion is rendered and is utilized or relied upon by the plaintiff. Quite apparently, any abstractor's, surveyor's or attorney's error is discoverable after the fact, the time of discovery being directly proportionate to the effort and expense which is devoted to the investigation. If, as the *Jepson* opinion postulates, the factors of reasonable diligence on the part of the plaintiff do not weigh in the test to determine when the damage is capable of ascertainment, then the strict application of the limitation statutes as they prevailed before the 1919 statute are reinstated in cases of this type.

In *Dixon v. Shafton,* 649 S.W.2d 435 (Mo. banc 1983), an attorney malpractice case, the court commented on the prior decisions in *Thorne* and *Jepson* and expressed agreement with the theories and results in both cases. The *Thorne* decision, which found the limitation statute not to have run against Johnson, the abstract company's customer, until he was alerted to the deed omission by later litigation, was expressly approved. This result is appropriate, the *Dixon* opinion observes, because the error was not actually discovered earlier and the only reasonable means of discovering the omission was through the abstract company. As to the Jepson case, the Dixon court concedes that the full amount of damages could not be determined when Jepson was released on parole, first because the subsequent vacation of the conviction was "a very significant circumstance" in determining what damages were recoverable and, second, because Jepson then was under the assumption his conviction was valid. Nonetheless, the *Dixon* court commends the result in *Jepson* as in harmony with prior statements interpreting and applying § 516.100 because Jepson "was in a position to protect his rights as soon as he was released from prison." *Dixon,* supra, at 439. The opinion does not

explain why, in contrast to the holding in *Thorne,* the statute of limitations ran against Jepson during the period when his damages were not determinable and when there had been no indication the conviction or Stubbs' advice were suspect.

Another facet of the problem is illustrated by the majority opinion in *Linn Reorganized School District v. Butler Manufacturing Company,* 672 S.W.2d 340 (Mo. banc 1984). There, the claim was of faulty design and improper installation of a roof which leaked from the first day of installation in July, 1972. Damage occurred to the roof and continued to affect interior building components including a gymnasium floor installed in November, 1972. The defect in the roof was known to the school district, the building owners, from the time it was first in place, but water damage continued to occur while the leaks remained unrepaired. Suit was not filed on the claim for negligent design and installation until October, 1977, more than five years after the design and construction deficiencies were known. The court held that the statute of limitations was tolled, notwithstanding current knowledge by the school district of its claim, during the period when damage from the leaking roof continued.

The *Linn* case cites and relies on *Davis v. Laclede Gas Company,* 603 S.W.2d 554 (Mo. banc 1980) which holds that the statute of limitations runs from the date the wrong is done only when the entire damage accrues in the first instance. "If, on the other hand, the wrong may be said to continue from day to day, and to create a fresh injury from day to day, and the wrong is capable of being terminated, a right of action exists for the damages suffered within the statutory period immediately preceding suit." *Davis,* supra, at 556.

We conclude this review with mention of *Anderson v. Griffin, Dysart, Taylor, Penner & Lay, P.C.,* 684 S.W.2d 858 (Mo.App. 1984). This was an attorney malpractice case in which the client, Anderson, suffered a default judgment because of lack of attention by the attorney to the litigation entrusted to him. Anderson had no notice of the judgment until his wages were garnished on execution some six years later. At this point he filed the damage suit against the attorney. The opinion held the limitation statute not to have run during the time Anderson was ignorant of the attorney's nonfeasance and its consequence. The result is based on the proposition that Anderson was entitled to rely on the attorney to act with competence. There was no obligation on Anderson to employ another attorney to verify what the first had done or to make independent inquiry himself. A motion filed in the Supreme Court to transfer the *Anderson* case was recently denied.

For the foregoing, we extract the following propositions. The statutory language, "capable of ascertainment," is applicable both to the wrong committed and to the loss suffered. During the period of time when either is incapable of ascertainment, the statute of limitations is tolled under § 516.100. If damages follow upon commission of the wrong, they are capable of ascertainment only when the consequences of the loss have been realized. In the case of recurring damages from a single wrong, the five year limitation is to be calculated retrospectively from the date suit is commenced. A plaintiff who is ignorant of the wrong done against him does not suffer the bar of the limitation statute unless the basis for the lack of knowledge is plaintiff's own failure to protect his interests. Where plaintiff has engaged expert or professional services, there is no obligation on the plaintiff to check or recheck the action or inaction of the party employed, unless facts or circumstances which suggest an error or omission are known by or are available to the plaintiff. If there is no manifestation of injury, the statute of limitations is tolled until there is some notice to the plaintiff that a wrong committed against him ultimately may result in harm.

In the case at bar, plaintiffs' cause of action against defendant surveyor arose from a technical breach of defendant's contract to produce an accurate survey at the

time the lot was platted and the stakes were set. At that time, however, there was no damage. The actual damages accrued only when plaintiffs erected the dwelling in conformity with the survey location. Even then, the statute of limitation did not commence to run because there was no manifestation of injury and no knowledge by plaintiffs that a wrong had been committed against them. Moreover, having hired defendant to perform a service which required technical and professional skill not possessed by plaintiffs, there was no duty on plaintiffs to check the work or engage a resurvey to determine if defendant had performed the job correctly. Plaintiffs were entitled to rely on defendant's specialized skills and to assume the survey produced was genuine and accurate. On this account, the statute of limitations did not commence to run on the claim until the dispute over the lot boundary gave cause for plaintiffs to inquire if defendant's work had been faulty. The petition was filed well within the limitation period when measured from this later date.

The judgment is reversed and the cause is remanded with direction to reinstate plaintiffs' petition.

All concur."

