Dorothy WRIGHT, Appellant,

v.

Scott L. CAMPBELL, et
al., Respondent.

No. WD 69141.

Missouri Court of Appeals,
Western District.

Jan. 27, 2009.

Application for Transfer to Supreme Court
Denied March 3, 2009.

Application for Transfer Denied
March 31, 2009.

Mark Meyer, Kansas City, MO, for appellant.

Brian Jenkins, Overland Park, KS, for respondent.

Before THOMAS H. NEWTON, C.J., and LISA WHITE HARDWICK and ALOK AHUJA, JJ.

ALOK AHUJA, Judge.

The circuit court granted summary judgment to Defendants–Respondents Scott Campbell and Cady & Campbell, L.L.C. (collectively "Campbell"), on the grounds that Plaintiff–Appellant Dorothy Wright's legal malpractice claim was time-barred under a two-year Kansas statute of limitations made applicable by operation of Missouri's borrowing statute, § 516.190.[1] Because we conclude that Wright's malpractice claim originated in Missouri, and is therefore subject to Missouri's five-year limitations period for such claims, we reverse.

### I.   Factual and Procedural Background[2]

On May 8, 1999, Dorothy Wright allegedly suffered bodily injuries when she was struck by a shopping cart pushed by an employee at a Country Mart grocery store in Atchison, Kansas. Wright was living in Rushville, Missouri at the time, and had been a Missouri resident since 1950. In March 2000, Wright met with attorney Scott Campbell at Cady & Campbell's offices in Platte City, Missouri concerning a potential claim against Country Mart. During their meeting, Campbell telephoned Kansas attorney Don Vasos. Campbell testified during his deposition that, apparently because he is not licensed to practice in Kansas, he and Vasos agreed that "I would work this side of the case with her and he would work the Kansas side of the case with her, with whatever needed to be done."[3] Wright ultimately executed a contingent-fee agreement which identified both Campbell and Vasos as her attorneys, although the agreement was only signed by Campbell.

Campbell testified in his deposition that, based on his mistaken belief that Wright's accident had occurred at the Country Mart store in Platte City, he had calendared Wright's claim as being subject to a five-year Missouri statute of limitations. In this appeal the parties do not dispute that Wright's personal-injury claim was in fact

---

1. Unless otherwise indicated, all statutory references are to RSMo 2000.

2. Consistent with the applicable standard of review, we recite the facts established by the summary judgment record in the light most favorable to Wright, the non-movant. We of course express no views on the merits of Wright's claims, which must be resolved after further proceedings on remand.

3. Campbell testified that he did not use Wright's name during his conversation with Vasos, and that during the call Vasos asked that after a fee agreement was executed Campbell "send him the materials" concerning the claim. Based on the record, it does not appear that Campbell had any further contact with Vasos concerning Wright's case until August 2001.

subject to a two-year limitations period established by Kansas statute.

On August 29, 2001, Campbell again met with Wright at his Platte City, Missouri office. As of that time, Campbell had not filed suit on Wright's behalf. According to his deposition testimony, at that meeting

> I relayed to her that I had adopted this [a]s a Missouri case [for limitations purposes]. It's a Kansas case. At the time, I believed the statute of limitation may have expired. At this time, I don't know if it did or not. [¶] I've discovered there are other exceptions and one of those exceptions could still be in play, so I indicated to her, at that time, that I believe she needed to obtain other counsel.

Based on the claim that he had failed to timely file her personal injury lawsuit, Wright sued Campbell for legal malpractice in the Platte County Circuit Court on May 9, 2006.[4] Campbell moved for summary judgment, arguing that Wright's malpractice claims were barred by the two-year statute of limitations found at K.S.A. 60–513(a)(4), which was rendered applicable by operation of Missouri's borrowing statute, § 516.190. On November 1, 2007, the circuit court granted Campbell's motion. The court held that Wright's "legal malpractice action accrued when the Kansas statute of limitations expired in the Kansas court where the claim should have been filed" no later than May 8, 2001. Because the claim accrued in Kansas, the circuit court held that Kansas' two-year statute of limitations for legal malpractice actions governed, and that this suit—filed on May 9, 2006—was untimely.

Wright appeals.

## II. Analysis

"We review a circuit court's summary judgment *de novo.*" *Ascoli v. Hinck,* 256 S.W.3d 592, 593 (Mo.App. W.D.2008)(citing *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993)). "Summary judgment is proper only when the parties are not genuinely disputing material factual issues and when the moving party is entitled to judgment as a matter of law." *Id.* "When we review a circuit court's summary judgment, we view the record in the light most favorable to the party against whom the circuit court entered judgment." *Id.* at 593–94.

In her sole Point Relied On, Wright argues that the circuit court "erred in granting summary judgment to [Campbell] because the Missouri borrowing statute was inapplicable ... in that [Wright's] cause of action for legal malpractice originated in Missouri." We agree.

▇▇▇ "In ruling on statute of limitation issues, the law of the forum state is applied." *Alvarado v. H & R Block, Inc.,* 24 S.W.3d 236, 241 (Mo.App. W.D.2000). As a general proposition, "Missouri, the forum, considers statute of limitations issues procedural, and therefore governed by Missouri law." *Id.*

▇▇▇ There is, however, an important statutory exception to this general "law of the forum" rule: "When a cause of action

---

4. We note that Wright first filed a malpractice action against Campbell on January 21, 2003. That case was subsequently dismissed without prejudice for want of prosecution. Wright does not argue that the filing date of this earlier lawsuit is relevant to the disposition of this appeal.

We also note that Dorothy Wright's husband, Jack Wright, originally asserted a loss a consortium claim in this case. The circuit court dismissed that claim on April 30, 2007, however, and that ruling is not challenged here.

'originates' in another state, ... the foreign state's statute of limitations becomes applicable through Missouri's borrowing statute, section 516.190." *Ferrellgas, Inc. v. Edward A. Smith, P.C.,* 190 S.W.3d 615, 620 (Mo.App. W.D.2006). Section 516.190 provides:

> Whenever a cause of action has been fully barred by the laws of the state, territory or country in which it originated, said bar shall be a complete defense to any action thereon, brought in any of the courts of this state.

"Thus, if the foreign state's statute of limitations bars the action, then Missouri's borrowing statutes acts to bar the action here as well." *Ferrellgas,* 190 S.W.3d at 620.

" 'Originated' as used in § 516.190 has the same meaning as 'accrued'" in § 516.100. *Day v. deVries & Assoc., P.C.,* 98 S.W.3d 92, 95 (Mo.App. W.D.2003). Section 516.100 states in relevant part:

> [T]he cause of action shall not be deemed to accrue when the wrong is done or the technical breach of contract or duty occurs, but when the damage resulting therefrom is sustained and is capable of ascertainment. . . .

"Because a cause of action originates where it accrues, § 516.100 not only determines *when* a cause of action accrues but *where* it accrues for purposes of determining whether the borrowing statute operates to bar an action." *Day,* 98 S.W.3d at 95 (emphasis added).

■ Accordingly, a cause of action accrues, and "originates" for purposes of § 516.190, when and where the damage "is sustained and is capable of ascertainment." The Missouri Supreme Court has emphasized that "the mere occurrence of an inju-

ry itself does not necessarily coincide with the accrual of a cause of action," since "[s]uch a reading would deprive the additional language 'and is capable of ascertainment' of any meaning." *Martin v. Crowley, Wade & Milstead, Inc.,* 702 S.W.2d 57, 58 (Mo. banc 1985).[5] In *Powel v. Chaminade College Preparatory, Inc.,* 197 S.W.3d 576 (Mo. banc 2006), the Supreme Court recently discussed the meaning of the phrase "capable of ascertainment" in some detail:

> [I]f damages are not capable of ascertainment either at the time of the wrong or the time of [actual] discovery of the wrong and resulting damages, then what is the test for when damages are capable of ascertainment? Although this Court has not previously clearly articulated a specific, generally applicable test to be used in making this determination, a consistent approach is evident upon careful review of this Court's decisions from the last 40 years: *the statute of limitations begins to run when the "evidence was such to place a reasonably prudent person on notice of a potentially actionable injury."*

*Id.* at 582 (quoting *Bus. Men's Assurance Co. of Am. v. Graham,* 984 S.W.2d 501, 507 (Mo. banc 1999)). *Powel* explains that the phrase "capable of ascertainment" is given "a practical construction": "until plaintiff has sufficient knowledge to be put on 'inquiry notice' of the wrong and damages, that standard is not met." *Id.* at 583; *see also id.* (noting that, in *Business Men's Assurance,* "notice of *sufficient information to alert plaintiff of the need to make inquiry* was the trigger for the running of the statute of limitations" (emphasis added)).

---

**5.** The parties' arguments focus on when—and where—Wright's damages as a result of Campbell's alleged malpractice were "capa-

ble of ascertainment," rather than where the damages were "sustained." We limit our discussion accordingly.

The "capable of ascertainment" standard has been applied on multiple occasions to situations in which the plaintiff and defendant are in a "layman/expert" relationship. In these circumstances, the Supreme Court has repeatedly rejected any reading of "capable of ascertainment" "to the extent that it would impose upon plaintiffs an automatic, affirmative duty to double check the services provided by a professional expert." *Martin,* 702 S.W.2d at 58. Instead, where the plaintiff and defendant are in a layman/expert relationship,

> this Court has stated that a plaintiff does not have a duty to double-check the work of a professional that the plaintiff has hired so long as the professional relationship continued. A cause of action for professional malpractice cannot begin to run *until the plaintiff knew or should have known [of] any reason to question the professional's work.*

*Deutsch v. Wolff,* 994 S.W.2d 561, 571 (Mo. banc 1999) (citation omitted; emphasis added); *see also, Klemme v. Best,* 941 S.W.2d 493, 497 (Mo. banc 1997).

These layman/expert principles apply to legal malpractice claims. Thus, in *Klemme,* the Supreme Court held that the plaintiff-client's claim that counsel had failed to seek his dismissal from an underlying lawsuit did not accrue until the plaintiff-client later learned that he remained in the suit and was identified as a participant in a contemplated settlement, and hired separate counsel to demand his outright dismissal. 941 S.W.2d at 497. Although the client's continuing status as a defendant in the underlying lawsuit was presumably a matter of public record, the Supreme Court held that, "[a]s in *Martin,* Klemme was under no duty to double check Best's work as long as Best was his attorney." *Id.*

Similarly, in *Anderson v. Griffin, Dysart, Taylor, Penner & Lay, P.C.,* 684 S.W.2d 858, 862 (Mo.App. W.D.1984), this court held that a legal malpractice claim did not accrue when a default judgment was entered against the plaintiff-client in a lawsuit in which his attorney had failed to represent him, but instead when the plaintiff-client's wages were garnished to enforce the judgment by default. Even though "the default judgment was a matter of public record," the court emphasized that, "[a]s a layman, Anderson cannot be expected to double check every act (or failure to act) of his attorney." *Id.* at 861. "[I]t would be absurd to require a client, in addition to hiring an attorney, to make a layman's investigation to determine whether the attorney had done his job properly or was forwarding important papers and orders to him." *Id.* at 862.

Finally, *Jordan v. Willens,* 937 S.W.2d 291 (Mo.App. W.D.1996), notes that "Missouri has long recognized that a claim for malpractice for failure to file an appeal arises as soon as the client learns that the time for appeal has elapsed." *Id.* at 294; *see also id.* at 294 n. 5 ("The time period does not begin to run until the client actually learns of his lawyer's default."); *see also Wilson v. Lodwick,* 96 S.W.3d 879, 884 (Mo.App. W.D.2002)(the statute of limitations on a malpractice claim against a lawyer begins running when the clients become aware of the facts constituting the alleged malpractice, realize they are facing a claim by reason thereof, and sustain damage (citation omitted)); *Laiben v. Roberts,* 936 S.W.2d 220, 222 (Mo.App. E.D. 1996) ("the statute of limitations does not begin to run, nor is the claim for legal malpractice deemed to have accrued, until the claimants *know* they have a claim for some amount").

■ Here, Campbell points to no evidence that would suggest that Wright "knew or should have known [of] any reason to question [Campbell's] work,"

*Deutsch,* 994 S.W.2d at 571, prior to the August 2001 meeting at Campbell's Platte City office, at which he informed her that he may have failed to comply with an applicable Kansas statute of limitations, and advised her to seek separate counsel. Although Campbell argues that Wright should have independently checked the state and federal courthouses serving Atchison, Kansas, on or after May 8, 2001, to verify that a petition had been filed on her behalf, well-established caselaw holds that, absent circumstances alerting her to potential deficiencies in Campbell's performance, Wright "was under no duty to double check [Campbell's] work as long as [he] was [her] attorney." *Klemme,* 941 S.W.2d at 497.

Campbell, and the trial court, rely heavily on this court's decision in *Ferrellgas, Inc. v. Edward A. Smith, P.C.,* 190 S.W.3d 615 (Mo.App. W.D.2006), to justify the dismissal of Wright's claims. *Ferrellgas* involved a legal malpractice claim stemming from a Missouri attorney's alleged mishandling of a California lawsuit that caused the attorney's Missouri client to sustain an adverse $2 million jury verdict; in reliance on the attorney's advice, the Missouri client had rejected a $275,000 pre-trial settlement offer. *Id.* at 617. The client sued counsel for malpractice in Missouri. The circuit court dismissed the action based on its application of a one-year California statute of limitations. On appeal, the client argued that its cause of action accrued in Missouri because that was where it first learned of the trial outcome, because it did not have a representative physically present in the California courtroom when the verdict was announced. *Id.* at 621. In rejecting this argument, we stated that the malpractice cause of action

"originated (or accrued) in California, in that the *fact* of damage resulting from [the attorneys'] alleged mishandling of that lawsuit was 'capable of ascertainment' " in California at the time the adverse verdict was returned in open court. *Id.* at 622. In reaching this conclusion the court emphasized that *Ferrellgas* "involve[d] a courtroom verdict.... A courtroom verdict becomes a matter of public record, which is immediately 'capable of ascertainment.' " *Id.* at 621.

This case is distinguishable from *Ferrellgas.* *Ferrellgas* dealt with injuries arising out of a $2 million dollar jury verdict announced in open court, and of which the client was presumably advised shortly after it was rendered. Any layman could appreciate the adverse impact of this award at the moment it was rendered, particularly in relation to the $275,000 settlement demand the client had been advised to reject (allegedly based on counsel's misunderstanding of California law concerning apportionment of fault). In contrast, in the present case nothing that would have put Wright on inquiry occurred in Kansas on the day on which the statute of limitations expired on her underlying personal-injury claim. No lawsuit was filed. Unlike *Ferrellgas,* the fact that Campbell allegedly failed to comply with the applicable statute of limitations was not "a matter of public record, which [was] immediately 'capable of ascertainment' " by an interested person. *Ferrellgas,* 190 S.W.3d at 621. *Cf. Anderson,* 684 S.W.2d at 861 (emphasizing that, "importantly," earlier cases which had found that damages were capable of ascertainment at time of entry of adverse judgment "involved misfeasance," whereas "[t]he present case involves nonfeasance").[6]

---

**6.** In *Henderson v. Beatty,* No. 4:05CV01325 AGF, 2006 WL 4007862 (E.D.Mo. Oct.11, 2006), a federal district court held, in reliance on *Ferrellgas,* that a legal malpractice claim filed in Missouri was time-barred under an Illinois limitations statute in circumstances

Instead of *Ferrellgas,* we believe the proper result in this case follows from *Jordan v. Willens,* 937 S.W.2d 291 (Mo. App. W.D.1996), which held that "a claim for malpractice for failure to file an appeal arises as soon as the client [actually] learns that the time for appeal has elapsed." *Id.* at 294. As with the non-filing of a timely notice of appeal, where a petition is not timely filed there is no outwardly-observable event that would alert a client to his attorney's alleged misfeasance. In the absence of any known or reasonably knowable circumstances which would impose on the client a duty to double-check the attorney's proper performance of his professional obligations, the mere passage of a mandatory time deadline on an underlying claim is not sufficient to commence the limitations period on a legal malpractice action.[7]

We accordingly conclude that Wright's legal malpractice claim accrued, and "originated" for purposes of § 516.190, in Missouri when Campbell informed her at his Platte City office that he may have failed to file a timely lawsuit, and advised her to retain separate counsel. Missouri's five-year statute of limitations for legal mal-

practice claims[8] accordingly governs. The parties do not dispute that, under Missouri's limitations statutes, Wright's lawsuit was timely filed. We accordingly reverse the circuit court's judgment granting Campbell's motion for summary judgment, and remand for further proceedings consistent with this opinion.

All concur.

---

very similar to the present case. For reasons explained in the text we decline to follow *Henderson.*

7. Indeed, this case arguably presents a stronger argument for delayed accrual than in *Jordan.* A notice of appeal must be filed in a particular court, and the filing deadlines are generally subject to only limited exceptions; whether a notice of appeal has been timely filed could thus be monitored relatively easily. Here, although Campbell argues that Wright's petition would have to have been filed in the state or federal courts serving Atchison, Kansas, that proposition would not have been reasonably evident to a layperson: Campbell testified in deposition that a Country Mart grocery store was located in Platte City, and we are aware of no circumstances that would have alerted Wright that her personal-injury suit could not be filed in Missouri, where she

had resided for more than 50 years. Further, Campbell testified that when he met with Wright in August 2001 to advise her to seek new counsel, he told her that he *"believed* the statute of limitation *may* have expired," but that he "d[id]n't know if it did or not," because there were exceptions to the statute which "could still be in play."

8. "Missouri's statute of limitations for personal injury actions, including legal malpractice, is five years." *Ferrellgas, Inc.,* 190 S.W.3d at 620 (citing § 516.120).