Michael POWEL, Appellant,

v.

CHAMINADE COLLEGE PREPARA-
TORY, INC., and the Marianist Prov-
ince of the United States, Respon-
dents,

and

Archbishop Justin Rigali, William
Christensen, and John J.
Woulfe, Defendants.

No. SC 86875.

Supreme Court of Missouri,
En Banc.

June 13, 2006.

As Modified on Denial of Rehearing
Aug. 22, 2006.

Joseph L. Bauer, Jr., James E. Hopkins, Jr., St. Louis, for appellant.

Gerard T. Noce, Matthew W. Potter, Michael L. Young, St. Louis, for respondents.

Rebecca M. Randles, Kansas City, Kenneth M. Chackes, M. Susan Carlson, Edward M. Goldenhersh, Bernard C. Huger, David P. Niemeier, St. Louis, Jeffrey R. Anderson, Patrick W. Noaker, St. Paul, MN, for amicus curiae.

LAURA DENVIR STITH, Judge.

This Court must determine whether the bar of the statute of limitations required entry of summary judgment in Respondents' favor on Michael Powel's claims against them for intentional failure to supervise clergy. Michael alleges that defendants Father William Christensen and Brother John Woulfe, while teachers living at Chaminade College Preparatory, Inc., sexually abused him while he was a minor attending and living at the school in the 1970s.[1] He alleges he repressed his memory of that abuse until age 41 and only then did the statute of limitations begin to run.

Applying what it believed was the controlling decision, *H.R.B. v. Rigali*, 18 S.W.3d 440 (Mo.App. E.D.2000), the trial court determined that Michael's damages became "capable of ascertainment" and the statute of limitations began to run when the sexual abuse occurred, that the statute of limitations was not tolled during the time Michael suppressed his memory of the wrong, and that his claim was time-barred before he brought suit in 2002. It entered judgment accordingly.

This Court reverses and remands for further proceedings. A tort claim such as that asserted by Michael does not accrue, and the limitations period does not begin to run, "when the wrong is done or the technical breach of ... duty occurs, but when the damage resulting therefrom is sustained and is capable of ascertainment." Sec. 516.100, RSMo 2000.[2] Here, the par-

---

1. For ease of understanding, this opinion refers to plaintiff by his first name because it largely discusses matters alleged to have occurred when he was a minor. The allegations stated herein are taken principally from Michael's testimony at his deposition.

2. Although all statutory references are to RSMo 2000 unless otherwise noted, section

ties' interpretation of the facts is clearly in conflict. Respondents argue that statements in Michael's deposition demonstrate that he knew of the wrongful conduct and that he had sustained substantial injury prior to his alleged repression of his memory, pointing to various parts of his deposition and other record evidence in support. Michael argues that his affidavit and that of his expert along with other parts of the record support his claim that he repressed his memory of the sexual misconduct before the resulting emotional and psychological damages caused by the wrongful conduct occurred, so that his damages were not capable of ascertainment until he regained those repressed memories in 2000.

While it is clear that the record contains conflicting evidence of what Michael knew at what point, the salient issue for statute of limitations purposes is whether these conflicts in evidence create a question of fact on the key issue whether, prior to his alleged memory repression, a reasonable person in Michael's position would have known or been put on inquiry notice not just of the wrong and nominal immediate injury therefrom, but also that substantial, non-transient damage had resulted and was capable of ascertainment.

It is not appropriate for this Court to make credibility determinations on summary judgment. Further, it is premature to determine whether Michael can meet this standard, for the trial court and parties have not yet had the opportunity to address whether this record presents a material factual question under this standard, nor have the parties had the opportunity to address whether additional discovery is necessary prior to determining this issue. This Court, therefore, reverses the judgment and remands the case.

516.100 has changed little since its enactment

## I. FACTUAL AND PROCEDURAL BACKGROUND

Michael Powel was born June 10, 1958. According to deposition testimony given by Michael in this case and others, he first suffered sexual abuse by a family member when he was only 5 or 6 years old. He suffered further sexual abuse from two other family members on several occasions between ages 6 and 10, and suffered substantial sexual abuse from the age of 9 or 10 until age 13, from two non-family members, one of whom committed serious acts of sexual abuse on dozens of occasions during that period.

Beginning in the fall of 1973, Michael, then aged 15, began attending Chaminade College Preparatory College, Inc. d/b/a Chaminade College Preparatory School, where Brother Woulfe and Father Christensen were members of the Marianist Province of the United States (Chaminade and the Marianist Province are hereinafter collectively referred to as "Chaminade"). Michael was a boarding student at the school, which is located in the city of St. Louis, between the ages of 15 and 17. He lived in Canning Hall. Brother Woulfe and Father Christensen also lived in Canning Hall. Michael remained a boarding student until the spring of 1975, when Chaminade expelled him for selling alcohol to other students at the school.

Once expelled, Michael, then age 17, moved to the home of his friend and fellow student, Marc, in Springfield, Illinois. According to deposition testimony, while there he was abused by Marc's mother. When that abuse was discovered, Michael had to leave. After leaving Marc's home, Michael felt he was good for nothing except sexual abuse. He started to hitchhike, and sometimes men would pay him for sexual favors. This conduct occurred

as section 1315 in 1919.

over the next four years. He continued to display a multitude of emotional and physical problems over the next decades.

In February 2000, Michael was diagnosed with a brain tumor. In the course of treatment for that condition, he regained previously repressed memories of five occasions of sexual abuse at the hands of Father Christensen and three occasions of sexual abuse at the hands of Brother Woulfe from 1973 to 1975, while a boarding student at Chaminade, including, *inter alia,* fondling, oral sex, and sodomy. Father Christensen also introduced Michael and his friend Marc to pornography at a St. Louis theater.

Michael alleges that, although he repressed his knowledge of the abuse, it caused post-traumatic stress disorder that subconsciously affected his conduct. This, he says, is what caused him to act out inappropriately, resulting in his dismissal from Chaminade and later his inappropriate sexual conduct, although he was not aware that this was the reason for his improper conduct until he regained his repressed memories in 2000 and began receiving therapy and treatment by a licensed clinical psychologist, Dr. Michael S. Greenburg, in 2001. On June 2, 2002, Michael filed suit against Chaminade for intentional failure to supervise clergy and individually against Father Christensen and Brother Woulfe for his damages resulting from the sexual abuse.

Chaminade filed a motion for summary judgment, claiming Michael's suit was barred by the statute of limitations. It pointed out that the report of Michael's expert psychologist, Dr. Greenberg, stated that Michael remembered being molested until approximately age 17 but then repressed his memories, and that at his deposition Michael said he always knew he had been abused, although he did not specify which abuse he had always known occurred.

Michael countered that his claim was not time-barred because he filed suit within the statutory period after ascertaining that he had been abused by Father Christensen and Brother Woulfe as a minor and that this abuse had caused or contributed to his psychological problems. Dr. Greenberg filed an affidavit clarifying that Michael had never told him that he knew of the sexual abuse prior to age 17. Rather, when asked repeatedly by Dr. Greenberg whether his memories of childhood abuse might have been "suggested" to him by a counselor he saw after he had his brain tumor at age 41, Michael had insisted he had recalled the childhood abuse before seeing the counselor, not as a result of her questioning. No testimony by Michael, and nothing in Dr. Greenberg's report, specifically states that Michael recalled abuse by Father Christensen or Brother Woulfe before age 17 or that he always knew of it (as opposed to one or more of the other sexual abuse incidents he testified had occurred). Michael elsewhere made it clear he had repressed knowledge of the abuse by Father Christensen and Brother Woulfe from the age of 17 until the time of the brain tumor. He filed an affidavit clarifying that he did not recall their sexual abuse until he regained his repressed memories.

The record presented factual issues (some of which are relevant and some not) as to what Michael knew and what he remembered at different points in his life about abuse by Father Christensen, Brother Woulfe, and others. The trial court concluded that, were it free to do so, it would find that a genuine issue of material fact existed as to whether Michael's damages were capable of ascertainment before he recovered his memories as an adult. But, the trial court said, it was bound by

H.R.B. to hold that damages resulting from sexual abuse are sustained and capable of ascertainment at the time of the abuse. It granted defendants' motion for summary judgment.

Michael appealed to the Court of Appeals, Eastern District, which transferred the case to this Court after opinion for resolution of the apparent conflict as to the meaning of the phrase "sustained and capable of ascertainment" as interpreted in H.R.B. as compared to various cases of this Court that would require a holding that the cause of action was not time-barred. Mo. Const. art. V, sec. 10.

## II. STANDARD OF REVIEW

Summary judgment shall be entered if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Rule 74.04(c)(6). The moving party bears the burden of establishing a right to judgment as a matter of law. *Id.* The statute of limitations is an affirmative defense, Rule 55.08, and respondents who move for summary judgment on that basis bear the burden of showing that it bars plaintiff's claims. *Warren v. Paragon Technologies Group, Inc.*, 950 S.W.2d 844, 846 (Mo. banc 1997). When reviewing a motion for summary judgment, this Court reviews "the record in the light most favorable to the party against whom judgment was entered" and accords that party "the benefit of all reasonable inferences from the record." *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993) (citations omitted). Review is essentially *de novo*. *Id.*

## III. THE CAPABLE OF ASCERTAINMENT STANDARD

Michael claims the trial court erred in granting Chaminade's motion for summary

judgment because his memory of the abuse was repressed, and once he recovered that memory in 2000, he took timely steps to file the instant suit against Chaminade for intentional failure to supervise clergy. The parties agree that plaintiff's tort claim against Chaminade for intentional failure to supervise clergy is governed by the general, five-year tort statute of limitations set out in section 516.120(4), which applies to an action for any "injury to the person or rights of another, not arising on contract and not herein otherwise enumerated." But, the parties disagree as to when that statute began to run. Only that question is addressed.

### A. When Are Damages are "Capable of Ascertainment" in Missouri?

As noted in *Chem. Workers Basic Union, Local Number 1744 v. Arnold Sav. Bank*, 411 S.W.2d 159, 164 (Mo. banc 1966), the short answer to this question is that the statute began to run when the damage resulting therefrom was sustained and capable of ascertainment. *Jepson v. Stubbs*, 555 S.W.2d 307, 312–13 (Mo. banc 1977), quoted a law review article identifying four events differing jurisdictions use as "triggers" for the accrual of a cause of action and the beginning of the running of the statute:

> [1] the moment the defendant commits his wrong (the 'wrongful act' test); [2] the moment the plaintiff sustains substantial injury or interference (the 'sustainment of injury' test); [3] the moment that plaintiff's damages are substantially complete (the 'capable of ascertainment' test); or [4] the moment the plaintiff first becomes aware that he had been aggrieved (the so-called 'discovery' test).

Frederick Davis, *Tort Liability and the Statutes of Limitation*, 33 Mo. L.Rev. 171, 187–88 (1968). Professor Davis concluded that:

The policy established by the Missouri statute adopts the third test. The running of the statute is measured from the time that the damages are complete *and* capable of ascertainment.

*Id.* (emphasis in original).

The capable of ascertainment test was expressly adopted by Missouri's legislature in 1919 for tort cases generally in section 1315, RSMo 1919. It has undergone only minor changes over the years and is now set out in section 516.100 as follows:

Civil actions, other than those for the recovery of real property, can only be commenced within the periods prescribed in the following sections, after the causes of action shall have accrued; provided, that for purposes of sections 516.100 to 516.370, the cause of action shall not be deemed to accrue when the wrong is done or the technical breach of contract or duty occurs, but when the *damage resulting therefrom is sustained and is capable of ascertainment, and, if more than one item of damage, then the last item,* so that all resulting damage may be recovered, and full and complete relief obtained.

(emphasis added). *Thorne v. Johnson,* 483 S.W.2d 658, 660–61 (Mo.App.K.C.1972), noted that the predecessor to section 516.100 was enacted in response to two earlier cases in which this Court said that under the prior statute the limitations period began to run when the wrong or technical breach occurred, and that:

The 1919 amendment had the effect of disapproving the foregoing choice which had previously been made by the courts. By that amendment to the statute of limitations, the *Legislature stated in the plainest of words that the cause of action should no longer be deemed to accrue 'when the wrong is done or the technical breach of contract or duty occurs',* as had been held.... Instead ...

the cause of action shall be deemed to accrue and limitations shall commence to run only from the time 'when the damage resulting therefrom is sustained and is capable of ascertainment'.

*Id.* at 661–62 (emphasis added).

All parties agree that section 516.100 governed the accrual of Michael's cause of action, at least until 1990. The more difficult issue, and one as to which Missouri opinions have not always been wholly consistent, is how to determine what the legislature meant by the phrase that the damages must be "sustained and ... capable of ascertainment, and, if more than one item of damage, then the last item, so that all resulting damage may be recovered, and full and complete relief obtained."

Plaintiff, in effect, asks this Court to hold that by this phrase the legislature meant that the statute of limitations would not begin to run until he subjectively became aware that he suffered damages and that they were caused by "the actions of the individuals" in question and were connected to his psychological injuries. This is very similar to the standard suggested in the law review article cited in *Jepson.* Professor Davis argued "capable of ascertainment" means when plaintiff subjectively should have discovered the injury and damages. 33 Mo. L.Rev. at 187–88. This Court specifically rejected this test, reasoning that if so construed, the test would be little different than the "discovery" rule, and "[t]his is not what the legislature did and it is not for us to rewrite the statute to so provide." *Jepson,* 555 S.W.2d at 313. Unfortunately, *Jepson* did not go on to expressly set out the proper test for when damages *are* capable of ascertainment.

Respondents argue that the proper interpretation of "capable of ascertainment" is that the statute of limitations begins to

run when the sexual abuse allegedly occurred—here from 1973 to 1975—because that is when the injury objectively *could have been* discovered or made known if the victim had not repressed his memory of it. They argue that if the alleged events occurred, they must have been traumatic and so must have caused immediate damage so that plaintiff could have maintained suit immediately.

Chaminade's argument also misses the mark. While, as they note, this Court has held that the test to be applied is an "objective" one, *Chem. Workers*, 411 S.W.2d at 163–65, the test respondents propose would make the statute begin to run at the time of the wrongful act in almost every sexual abuse case in which the victim was not an infant and was without mental disability. Indeed, as the parties note, this is exactly what was held in *H.R.B.*, 18 S.W.3d at 443, which the trial court felt bound to follow.

Yet, as *Jepson* teaches, and as *Thorne* noted, the legislature specifically required in section 516.100 that a court *cannot* make the time the wrong is done or the technical breach of duty occurs the time when the cause of action accrues. Neither does it accrue as soon as damages occur. A third event must also take place before the claim accrues: in addition to a wrongful act, and in addition to resulting damages, the damages must also be *capable of ascertainment*. Sec. 516.100.

For this reason, *Sheehan v. Sheehan*, 901 S.W.2d 57, 59–60 (Mo. banc 1995), specifically rejected the argument made by the dissenting judge therein that damages from major sexual abuse are always sustained when the wrongful conduct occurs and are capable of ascertainment at that time. *K.G. v. R.T.R.*, 918 S.W.2d 795, 798

(Mo. banc 1996), reaffirmed that understanding of *Sheehan* a year later, stating, "[i]n *Sheehan, supra*, this Court held that . . . in cases of involuntary repressed memory, the date the injury occurs may be later in time than the battery."

But, if damages are not capable of ascertainment at either the time of the wrong or the time of discovery of the wrong and resulting damages, then what is the test for when damages are capable of ascertainment? Although this Court has not previously clearly articulated a specific, generally applicable test to be used in making this determination, a consistent approach is evident upon careful review of this Court's decisions from the last 40 years: *the statute of limitations begins to run when the "evidence was such to place a reasonably prudent person on notice of a potentially actionable injury."*[3] At that point, damages would be sustained and capable of ascertainment as an objective matter—or, in the words of Professor Davis, that is the moment when the damages would be "substantially complete." Davis, 33 Mo. L.Rev. at 187–88.

Thus, in *Chem. Workers*, 411 S.W.2d at 164–65, a union claimed that the statute of limitations did not begin to run on its president's conversion of funds until it discovered the signatures he had forged on checks. This Court disagreed and held that if an act is not legally injurious until consequences occur, then the period of damage runs from the date of consequential injury. *Id.* The consequential injury was the triggering factor, not the wrong. The statute began to run once the union officers were put on notice of a problem because their anticipated dividend checks were not deposited, for at that point "upon

**3.** *Bus. Men's Assurance Co. of America v. Graham*, 984 S.W.2d 501, 507 (Mo. banc 1999) ("BMA"), discussed *infra*.

any inquiry [the damages] soon could have been discovered and made known," "[s]ince the amount of damage [equaled] the amount of the check." *Id.* at 165.

Notice of some substantial damage resulting from the wrong was also identified as the triggering event in *Dixon v. Shafton,* 649 S.W.2d 435 (Mo. banc 1983). Four partners signed a contract without being informed by their fifth partner, an attorney, about a clause in the contract that ultimately caused them damage. Although the wrong had existed and had been at least theoretically ascertainable since the inception of the contract, the statute of limitations did not begin to run until the lawyer-partner advised the remaining partners that they should get independent counsel because he had made a mistake in the contract. At that point, although the remaining partners did not know the extent of their damages, they did know that "a substantial claim existed as to them. They had suffered some damage, at least to the extent that they had to hire new counsel who would have otherwise been unnecessary." *Id.* at 438.

A similar approach was taken in *Martin v. Crowley, Wade & Milstead, Inc.,* 702 S.W.2d 57 (Mo. banc 1985). In 1983, plaintiffs sued defendants for the latter's negligent 1973 survey of their residential lot, which had caused them to build their house in the wrong place, resulting in diminished market value. The trial court found the statute of limitations commenced running at the time of the negligent survey in 1973, at which point "the defect complained of was visible and ascertainable by an easy inspection of the land or by asking a neighbor." *Id.* at 58. This Court reversed, stating that plaintiffs should not be required to "double check the services provided by a professional expert." *Id.* Nothing indicated that "plaintiffs knew or should have known of any reason, until

May, 1981, to question defendant's work." *Id.* It was only when they learned in 1981 that the house had been built too close to the property line that the statute began to run, for the "mere occurrence of an injury itself does not necessarily coincide with the accrual of a cause of action." *Id.*

Indeed, *Martin* stated, a holding that the statute begins to run under section 516.100 at the time of the wrong "would deprive the additional language 'and is capable of ascertainment' of any meaning." *Id.* In other words, *Martin* gave the phrase "capable of ascertainment" a practical construction; until plaintiff has sufficient knowledge to be put on "inquiry notice" of the wrong and damages, that standard is not met.

In *BMA,* 984 S.W.2d 501, this Court again held that notice of sufficient information to alert plaintiff of the need to make inquiry was the trigger for the running of the statute of limitations. In that case, marble panels were installed on the outside of an office building when it was built in the 1960s. The defect existed from the start, so at least theoretically some damage had been sustained at that time, which the owners could have ascertained if they had looked behind the marble slabs covering the building. As a realistic matter, no owner would do so until alerted to check the slabs, however.

This Court rejected defendant's claim that the statute began to run as soon as the building was built, or even when other problems with the panels became known over the ensuing decade. It took a more practical approach and held that the damages were sustained and capable of ascertainment only when the damage sued for was substantially complete, which is when the "evidence was such to place a reasonably prudent person on notice of a potentially actionable injury." *Id.* at 507. This occurred in 1985 when the first panels

began to fall. In other words, *BMA* took the approach that it is not the existence of a nominal claim for damage, but the occurrence and capability of ascertaining actual and substantial damage, that begins the running of the statute.

Of course, as this Court reiterated in *Klemme v. Best*, 941 S.W.2d 493, 497 (Mo. banc 1997), "[a]ll possible damages do not have to be known, or even knowable, before the statute accrues." But, *Klemme* also reaffirms that the mere existence of the wrong and some nominal damage is not enough. Plaintiff must also have notice of these facts or of something that puts plaintiff on notice to inquire further. Thus, in *Klemme* plaintiff sued his attorney for malpractice. So long as he and defendant had an active attorney-client relationship, this Court said, he "was under no duty to double check" his attorney's work. *Id.* "However, by the time [he] retained separate counsel ... the fact of damage could have been discovered or made known. At that point any inquiry would have revealed that [counsel] had not sought [his] removal from the federal suit." *Id.*

### B. Applying an Objective Standard to Repression of Memory Cases.

The standard to be gleaned from these prior cases has special application to cases of repressed memory. If the memory of the wrong was repressed before the victim had notice both that a wrong had occurred and that substantial damage had resulted, or before the victim knew sufficient facts to be put on notice of the need to inquire further as to these matters, then the claim would not yet have accrued at the time that the victim repressed his or her memory of the events. From that point forward, until the memories were regained, while the victim might have suffered damage, the victim would not have sufficient notice to have a duty to inquire

further. Only when he or she regained the repressed memories would the victim for the first time have "reason to question" defendant's conduct and have information sufficient "to place a reasonably prudent person on notice of a potentially actionable injury." *BMA*, 984 S.W.2d at 507.

This is consistent with the approach taken by this Court in prior cases involving sexual abuse. Thus, *Sheehan* held that plaintiff's petition did not "indicate on its face and without exception that suit was barred," because it was "ambiguous as to when [plaintiff] *objectively could have discovered or made known the fact of damage.*" 901 S.W.2d at 59 (emphasis added). In essence, this Court was stating that the pleadings raised a question as to when plaintiff had sufficient information to have been put on notice of a potentially actionable injury.

Similarly, in *K.G.*, this Court held, "it is the memory of the consequential injury and damages," 918 S.W.2d at 798, (and not either the occurrence of the wrong or the discovery of the tortfeasor) that begins the running of the statute of limitations. This meant that, where memories had been repressed before the victim became aware of her damages, the statute might not begin to run until she regained her memories. *Id.*

In sum, under the above cases the capable of ascertainment test is an objective one. The issue is not when the injury occurred, or when plaintiff subjectively learned of the wrongful conduct and that it caused his or her injury, but when a reasonable person would have been put on notice that an injury and substantial damages may have occurred and would have undertaken to ascertain the extent of the damages. At that point, the damages

would be sustained and capable of ascertainment as an objective matter.[4]

## IV. APPLICATION OF THE STANDARD TO THIS CASE

 Because the capable of ascertainment standard is an objective one, where relevant facts are uncontested, the statute of limitations issue can be decided by the court as a matter of law. "However, when contradictory or different conclusions may be drawn from the evidence as to whether the statute of limitations has run, it is a question of fact for the jury to decide." *Lomax v. Sewell*, 1 S.W.3d 548, 552–53 (Mo.App. W.D.1999); *Straub v. Tull*, 128 S.W.3d 157, 159 (Mo.App. S.D.2004).

Under the approach advocated by Chaminade, the statute would have been triggered and damages held to be capable of ascertainment at the time of the abuse. While it would have been tolled during Michael's minority, it would have begun running as soon as he turned age 21, and he would only have had the statutory period in which to bring his claim. This would be true even though he had by that time repressed his memory of the events, for the statutes in effect at the time of the wrongs here sued for did not provide for tolling due to repressed memories. Although such a statute was enacted in 1990, *see* sec. 537.046, RSMo Supp.1990, as this Court held in *Doe*, it cannot constitutionally be applied to claims that were time-barred before its effective date. 862 S.W.2d at 341–42.

This approach in practical effect equates sustainment of injury with when the damages are capable of ascertainment and, at least in cases of repressed memory, effectively makes the date of the wrongful conduct the date when the statute of limitations begins to run. For all the reasons discussed earlier, this approach is incorrect. As Judge Wolff's concurring opinion notes, it ignores the fact that in some cases the victim may be so young, mentally incompetent or otherwise innocent and lacking in understanding that the person could not reasonably have understood that substantial harm could have resulted from the wrong.[5]

4. In *K.G.*, 918 S.W.2d. at 798, that occurred after the enactment of a special statute of limitations applicable in repressed memory cases. Sec. 537.046, RSMo Supp.1990. Although this Court held in *Doe v. Roman Catholic Diocese of Jefferson City*, 862 S.W.2d 338, 341 (Mo. banc 1993), that this statute cannot revive claims already barred at the time the statute was adopted, *K.G.* clarified that the special statute will apply to a sexual abuse/repressed memory claim for which the statute had not yet run in 1990. Contrary to respondents' arguments here, it would not be violative of the principles set out in *Doe* to apply the standard set out in section 537.046 here, for the statute of limitations had not run at the time it was enacted. Moreover, the interpretation of the "capable of ascertainment" test in this case follows prior sexual abuse cases. It does not establish new law, and there is no bar to applying it to cases such as this one.

5. It is evident that Chaminade is concerned that undue prejudice will occur as a result of the nature of the allegations of abuse, without regard to their accuracy, and that it seeks to avoid such prejudice by summary judgment. While its concern is a serious one, extensive voir dire, sequestration, changes of venue, a careful balancing of the probative value of evidence with its prejudicial effect, and similar mechanisms are the permissible methods for preventing such prejudice; precluding a jury from hearing the case because of concern that the jurors will overlook the weakness of plaintiff's evidence out of a desire to punish someone for clergy abuse generally is not appropriate.

Additional discovery may clarify whether a reasonable person in Michael's situation would have been capable of ascertaining the substantial nature of the damages he suffered and for which he now seeks recompense. But, on this record, these are questions of fact that cannot be resolved by this Court on summary judgment, as the concurring opinion seems to suggest might be possible as to some issues. This is particularly true where, as here, because the parties did not have the benefit of this opinion, neither they nor the trial court have addressed the statute of limitations issue from the objective, "reasonable person" standard set out herein. Neither have they addressed whether additional discovery is necessary in order to resolve the relevant issues under this standard. It is appropriate that the trial court and parties resolve these issues under the standard set out herein in the first instance.

## V. CONCLUSION

For the reasons set out above, the judgment is reversed, and the cause is remanded. To the extent that *H.R.B., Vandenheuvel v. Sowell,* 886 S.W.2d 100 (Mo.App. W.D.1994), *Harris v. Hollingsworth,* 150 S.W.3d 85 (Mo.App. W.D.2004), and similar cases set out a standard inconsistent with that set out herein, they are no longer to be followed.

LIMBAUGH and WHITE, JJ., and BLACKMAR, SR. J., concur.

WOLFF, C.J., concurs in result in separate opinion filed.

RUSSELL, J., concurs in opinion of WOLFF, C.J.

PRICE, J., dissents in separate opinion filed.

TEITELMAN, J., not participating.

MICHAEL A. WOLFF, Chief Justice, concurring.

I concur in the result of the principal opinion but I am doubtful whether, on remand after further discovery, Powel's claim can survive summary judgment.

An action "shall not be deemed to accrue when the wrong is done or the technical breach of contract or duty occurs, but when the damage resulting therefrom is sustained and is capable of ascertainment...." Section 516.100. I agree with the principal opinion that the "capable of ascertainment" standard is an objective one. *Sheehan v. Sheehan,* 901 S.W.2d 57, 59 (Mo. banc 1995). It is only "when contradictory or different conclusions may be drawn from the evidence as to whether the statute of limitations has run" that it becomes a question for the jury. *Lomax v. Sewell,* 1 S.W.3d 548, 552–53 (Mo.App. 1999). I also agree with the principal opinion that "the statute of limitations begins to run when the 'evidence was such as to place a reasonably prudent person on notice of a potentially actionable injury.'" (Citation omitted).

The circuit court believed it was bound by *H.R.B. v. Rigali,* 18 S.W.3d 440 (Mo. App.2000). *H.R.B.* may have gone too far in stating that "[w]here an overt sexual assault occurs, the injury and damage resulting from the act are capable of ascertainment at the time of the abuse." 18 S.W.3d at 443. There is an obvious difference in the ability of a five-year-old to ascertain damages and a 15-year-old.

Without considering *H.R.B.*, the circuit court on remand, after further development of the record, may consider a motion for summary judgment.

Is there a factual issue as to when Powel's damages were "capable of ascertainment?" His deposition testimony indicates no such factual issue—his damages were ascertained at the time of the alleged abuses.

On the record so far, the factual issue that Powel creates, to avoid summary judgment, is with his own testimony. Powel in his affidavit says he repressed memory of the alleged sexual abuse, but Powel also testified in his deposition that he always remembered the alleged abuse. The affidavit of Powel's expert, a psychologist, is based on Powel's contradictory and unsubstantiated statement; it adds nothing to determine whether there is a factual issue.

This record developed thus far may show some confusion on Powel's part, but it does not seem to create a "genuine issue of material fact" for a jury's determination.

**The Statute of Limitations**

The purpose of statutes of limitations is to bar stale claims. *Thatcher v. De Tar*, 351 Mo. 603, 173 S.W.2d 760, 761 (1943). The relevant statute of limitations here is five years after the cause of action accrued. Sections 516.120(4) and 516.100.[1] The statute of limitations would have been tolled, however, based on Powel's minority. Section 516.170; *Strahler v. St. Luke's Hospital*, 706 S.W.2d 7 (Mo. banc 1986).[2]

The statute of limitations is an affirmative defense. Rule 55.08. Most often a statute of limitations defense is established as a matter of law, by reference to the face of the pleadings or upon a motion for summary judgment, as in this case.

Powel's deposition testimony seems to demonstrate that his injuries were capable of ascertainment at the time of the alleged abuses. Furthermore, his testimony is that he always knew and remembered being molested, without any help from others.

**The Facts Pertinent to the Statute of Limitations**

Powel relies on his unsupported claim that "he did not realize he had suffered a wrong at the time" of the alleged abuse. This reliance is contrary to the concept of an objective test: the question is whether a reasonable person in his situation would realize he had suffered a wrong. The situation Powel describes in his deposition would certainly have made a reasonable person aware of the wrong. Powel testified in his deposition as to the sexual abuse that he said occurred in 1973–1975 while he was a high school student at Chaminade. He said he felt disgusted and "sick to [his] stomach" and associated physical and emotional pain after each of the alleged sexual assaults perpetrated by

1. Unless otherwise noted, all statutory citations are to RSMo 2000.

2. "Except as provided in section 516.105, if any person entitled to bring an action in sections 516.100 to 516.370 specified, *at the time the cause of action accrued* be either within the age of twenty-one years, or mentally incapacitated, such person shall be at liberty to bring such actions within the respective times in sections 516.100 to 516.370 limited after such disability is removed." Section 516.170. (Emphasis added.)

Woulfe. "I felt it was wrong," he said. Powel also testified that he felt physically and emotionally sick after incidences in which Christensen engaged him in viewing x-rated films, oral sex, fondling, and anal sodomy. Powel's psychologist report states that Powel reported feeling "dirty, confused, ashamed, and had to hold these experiences a secret from others." Powel testified that he avoided Woulfe and Christensen after the abuses. Powel remembered being molested and abused until sometime during his 17th year. These incidences, if they occurred, were certainly "capable of ascertainment." Nothing in the record refutes these admissions.[3]

Sometime around age 17 until he was 41, however, Powel said he repressed his memory of these abuses. His deposition testimony, however, acknowledges a statement that directly contradicts his story of repressed memory. Powel was asked about a statement contained in the psychological evaluation of the psychologist to whom he was sent by his attorney to substantiate his repressed memory theory. In deposition, Powel was first asked whether he told the psychologist that he always remembered the abuse. Powel avoided the question by claiming that his statement was taken out of context. So, Powel was asked directly: "[D]id you know, always know that you had been molested and remembered it from the beginning without any assistance from oth-

ers?" His response: "Yes." He twice gave an affirmative answer to this question.

Based on Powel's deposition and other evidence presented in the summary judgment proceedings, the circuit court found that "there is no doubt here that [Powel] was consciously aware of the abuse when it occurred." The court also found that "there is no question here that the abuse was emotionally traumatic and sometimes, physically painful when it occurred." Even Powel's response to defendants' motion for summary judgment admits that the evidence "establishe[s] that the alleged acts of sexual abuse, which occurred between 1973 and 1975, were overt, traumatic and painful at the time of their occurrence."

### Applying the Law

Whether Powel repressed his memory is irrelevant because his injuries were capable of ascertainment when the abuses occurred. As the principal opinion notes, at the time of the alleged wrong, there was no statute in effect that provided for tolling due to repressed memory.[4]

Powel's damages were objectively *capable* of ascertainment when they occurred. Subjective knowledge of damages is not required. To hold that the statute of limitations began to run when Powel allegedly regained his memory, while completely ignoring the facts that Powel was harmed and knew—as any reasonable person would—that the abuse was wrong when it occurred, improperly institutes a discovery

---

3. Powel admits in his response to defendant's statement of uncontroverted material facts that he felt physically and emotionally ill after the alleged abuses.

4. Section 537.046, enacted in 1990, cannot be applied to revive claims on which the statute of limitations has run. *Doe v. Roman Catholic Diocese of Jefferson City*, 862 S.W.2d 338, 341 (Mo. banc 1993).

standard. The general assembly enacted a discovery standard for child sexual abuse cases in 1990 in section 537.046.[5] Presumably this statute was enacted because the legislature believed one was needed. If having a repressed memory means that a plaintiff's damages were not capable of ascertainment under the statute of limitations in section 516.100, there would have been no need for section 537.046. If that were the case, Doe's claim in *Doe v. Roman Catholic Diocese of Jefferson City* would not have been barred.

At ages 15–17, Powell was a minor at the time of the alleged abuse. As such the statute of limitations was tolled until age 21. He had five years thereafter to file a claim. Section 516.170; *Strahler*, 706 S.W.2d at 11.

This is not the case of a very young child who does not know he or she is being abused when it occurs. There is an obvious difference in the ability of a five-year-old to ascertain damages and a 15–year-old. The 15 to 17–year-old Powel ascertained his damages. If his claim was ascertained at ages 15 through 17, his failure to bring the claim before his 26th birthday bars his claim.

Powel's damages need not be complete at the time they are first ascertained. A cause of action accrues when a party can first ascertain the fact of damage, even though he may not know the extent of the damage. *Business Men's Assur. Co. of America v. Graham*, 984 S.W.2d 501, 507 (Mo. banc 1999). The fact that Powel's damages may not have become "complete" until after a period of memory repression is irrelevant. The fact that he suffered damages was known. The alleged memory repression, as an excuse for not filing his claim on time, does not create an issue to be tried.

## Does Powel create a "genuine" issue of material fact?

Assuming, for sake of argument, that a repressed memory is a valid excuse for not filing his claim on time, Powel's position seems unsupported. To defeat the motion for summary judgment, Powel submitted his own affidavit and that of a psychologist to make a genuine issue of fact by contradicting his own deposition testimony that he always remembered the abuse.

The summary judgment rule requires that evidence submitted by affidavit be admissible. Rule 74.04(e). The circuit court said that the affidavits of Powel and Dr. Greenberg were sufficient to rebut Powel's deposition testimony.

On remand, I believe this position should be reconsidered, especially if the record does not change substantially. The circuit court could exclude the expert's opinion in the affidavit under the standard for admissibility governed by section 490.065. Because Powel's deposition testimony contradicts the expert's factual basis for his opinion, the proposed purported expert testimony fails two key criteria set forth in section 490.065.

The first criterion that the expert's opinion fails to meet is section 490.065.1, which provides that "if scientific, technical or other specialized knowledge will *assist the trier of fact* to understand the evidence or to determine a fact in issue, a witness qualified as an expert ... may testify

---

**5.** Section 537.046.2 provides:

2. Any action to recover damages from injury or illness caused by childhood sexual abuse in an action brought pursuant to this section shall be commenced within ten years of the plaintiff attaining the age of twenty-one or within three years of the date the plaintiff discovers, or reasonably should have discovered, that the injury or illness was caused by childhood sexual abuse, whichever later occurs.

thereto in the form of an opinion or otherwise." (Emphasis added.) In this case, Powel's deposition testimony is that he always remembered the alleged sexual molestation. It is difficult to see how an expert's opinion, whose factual basis is contradicted by Powel's sworn testimony, would at all "assist the trier of fact." The expert's report and affidavit go to some length to dispel the notion that Powel's memory of molestation had been created by suggestion from a therapist. What the expert does not establish is any objective determination that Powel's memory was in fact repressed. The expert describes Powel as a "reliable reporter" after trying to explain away psychological test results that show substantial psychopathology. The most that can be said of the expert's opinion as to repressed memory is that it is based solely on what Powel told him. What does "reliable reporter" mean? For what it is worth, does the expert believe him?

The second criterion that the expert's opinion fails to meet is the requirement of section 490.065.3 that the facts or data on which an expert bases his or her opinion "must be of a type reasonably relied upon by experts in the field in forming opinions or inferences upon the subject" and the facts or data "must be otherwise reasonably reliable." The fact—upon which the expert relied in rendering his opinion—is Powel's statement that he repressed the memory of the events at about the age of 17 and did not remember them until after he suffered a brain tumor at age 41. That fact, however, is not reasonably reliable because it is contradicted by Powel's own sworn testimony.

There is nothing in the psychologist's affidavit to indicate that a fact derived from an interview—which not only contradicts sworn testimony, but is based solely on what Powel supposedly said to the psychologist—is of the type "reasonably relied upon by experts in the field." This subjective and contradicted fact, which is the basis for the psychologist's opinion, cannot be considered reasonably reliable in the absence of evidence that such facts are relied upon by experts in the field. As I indicated above, I am not even sure this expert believes him. Why should a court?

It is for the trial court to determine admissibility based on these criteria, and I would suggest that the court do so on remand. The factual basis of the expert's opinion is not a jury question. It is a determination made by the trial judge in assessing whether or not the testimony of the expert is admissible. On remand, the trial judge would be justified in ruling that the opinion of the psychologist is inadmissible under section 490.065. *See generally, State Bd. of Registration for the Healing Arts v. McDonagh,* 123 S.W.3d 146 (Mo. banc 2003) at pp. 152–158 (principal opinion) and pp. 160–161 (concurring opinion of Wolff, J.). I am not suggesting that the circuit hold a wide-ranging *Daubert* type hearing because section 490.065 does not authorize that kind of hearing.[6] Missouri's standard for admissibility of expert testimony in civil cases, which borrows some of the language from the Federal Rules of Evidence, Rules 702, 703, and 704(a), is a far simpler approach than the federal rules. Under Missouri's approach, the trial judge must determine whether the testimony of the expert will assist the trier of fact and whether the expert's testimony is based upon reliable facts or data.

**6.** *Cf., Daubert v. Merrell Dow Pharm. Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

Without the expert's opinion, the circuit court is left with the sworn testimony of Powel himself. It is noteworthy that the expert's affidavit was executed shortly after Powel's deposition testimony, as was Powel's affidavit. Both apparently were intended to contradict his deposition testimony so as to avoid summary judgment. Generally, "a party may not avoid summary judgment by giving inconsistent testimony and then offering the inconsistencies into the record in order to demonstrate a genuine issue of material fact." *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 388 (Mo. banc 1993). There may be circumstances in which a party may be permitted to contradict his own deposition testimony, where the deponent obviously was mistaken or misspoke. The context of Powel's answer was what he told the psychologist in the interview, which Powel says the defense misconstrued. He acknowledged saying that he always remembered the sexual abuse. His deposition appears to be consistent with his earlier statement to the psychologist—his testimony certainly does not appear to be a misstatement. The circumstances in this case, therefore, do not justify allowing Powel to establish an issue of fact with his own testimony.

The fundamental difficulty that I find in this case is that Powel's wholly subjective account—that his memory was repressed for 24 years—can be used to defeat a statute of limitations that should have barred this claim nearly 25 years ago.

That his account is repeated by an expert, with no further substantiation or documentation, does not make his account any less subjective.

The statute of limitations in this case is tolled solely on the basis of what Powel says was in his mind (or was not in his mind for a period of years). Can a statute of limitations be nullified by a party who says he forgot something? Why have a statute of limitations?

The rule requires that summary judgment be granted where there is "no genuine issue as to any material fact." Rule 74.04(c). To find a genuine issue of material fact in this case is to re-institute the requirement of the former Rule 74.04(h) that summary judgment can only be granted where a movant establishes the right to judgment by "unassailable proof." This requirement was deleted in 1988 to mirror the language of the federal rule. *ITT*, 854 S.W.2d at 378.[7] The attempt to create an issue of fact with Powel's own testimony should not be countenanced by considering it a genuine issue of fact. It is not.

Neither Powel's revised testimony nor his expert's questionable opinion can produce an issue of material fact in the face of this admission and clear testimony that he had ascertained his injury at the time it allegedly occurred. Even where admissible expert testimony may support a repressed memory theory, courts should be very skeptical of this theory in light of the scientific literature.[8] It is not necessary,

---

7. Federal courts have often been overly aggressive in granting summary judgment under the *Celotex* trilogy of United States Supreme Court decisions. This, fortunately, has not been the case in Missouri courts although the standard stated is basically the same. *See ITT*, 854 S.W.2d at 378–379, *citing Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91

L.Ed.2d 202 (1986); *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

8. *See*, for example, Loftus, E.F. Bernstein, D. M., "Rich False Memories: The Royal Road to Success," in A.F. Healy (Ed) *Experimental Cognitive Psychology and its Applications*, Washington DC: Amer. Psych. Assn. Press, p. 101–113 (2005); Loftus, E. F., "The Dan-

however, to weigh in on the scientific question in this case. The record of Powel's testimony as well as, presumably, his statement to the psychologist who examined him for this lawsuit show that, whatever its supposed validity, the so-called repressed memory theory simply does not fit.

### Conclusion

This case starkly presents the genuine need for a dispassionate evaluation of the evidence on summary judgment that relates to the statute of limitations. Powel's deposition testimony avers that he has had a very troubled and difficult life, recounting many years of sexual abuse from a very early age.

The allegations that he was sexually abused by Father Christensen and Brother Woulfe in 1973–1975 are not said to be causally or otherwise related to the other incidents of sexual abuse. However much a court or jury may wish to help Powel with an award of damages because of injustices and injuries he has suffered throughout his life, it is highly speculative to suppose that these clerics and their superiors are the ones who owe him. Powel's feeling that he was "let down and betrayed by the church and its representative, particularly in light of the proper duties of church officials," as the psychologist reports, is undoubtedly widely shared. That some Catholic clerics have been credibly accused of sexual abuse and that some in the church hierarchy have covered up

sexual abuse in other cases do not make all such allegations worthy of trial.

The just purpose of the statute of limitations is to avoid presenting stale claims to a finder of fact, claims that are often difficult to prove or rebut. Powel's own testimony on this record shows that the statute of limitations bars his claim.

The Court remands this case to the circuit for further development of the record without the *H.R.B.* precedent. The remand should give the defendants, as well as Powel, the opportunity to show whether or not there is a genuine issue of fact to be tried under the "capable of ascertainment" standard. On the record thus far, I do not think that there is such an issue. But perhaps Powel can establish that there is an issue for trial. If not, summary judgment will be appropriate.

**WILLIAM RAY PRICE, JR.,** Judge, dissenting.

I dissent. I joined Judge Holstein's dissenting opinion in *Sheehan v. Sheehan*, 901 S.W.2d 57, 59 (Mo. banc 1995). I still believe that the majority in *Sheehan*, as well as the majority here, state an "objective" standard, but apply a "subjective" one. Under an objective standard, a reasonable and competent 15–to–17–year–old man would know that he suffered harm from repeated sexual abuse by his teachers at a religious school.[1]

Assuming there is an evidentiary issue here, the majority has misplaced the bur-

---

gers of Memory," in R.J. Sternberg (Ed) *Psychologists Defying the Crowd*, Washington, DC: Amer. Psych. Assn. Press. Pp. 105–117 (2003). References in the legal literature include Gary M. Ernsdorff & Elizabeth F. Loftus, *Let Sleeping Memories Lie? Words of Caution about Tolling the Statute of Limitations in Cases of Memory Repression*, 84 J.Crim. L. & Criminology 129, 155–164 (1993); Wendy J. Kisch, *From the Couch to the Bench: How Should the Legal System Respond to Recovered*

*Memories of Childhood Sexual Abuse?*, 5 Am. U.J. Gender & L. 207 (1996).

1. I agree with the majority and Chief Justice Wolff that there may be victims who are so young or lacking in understanding that they might not ascertain that they have been abused or harmed. No such exception was argued here.

den of proof regarding the repressed memory exception. Defendants bear the burden of proof to establish that a claim is barred by the statute of limitations and they have met this burden. The alleged abuse occurred from 1973 to 1975 and suit was brought in 2002. Twenty-seven years had passed.

Plaintiff now bears the burden of proof to establish an avoidance of the statute of limitations based on repressed memory. "The party who relies on facts in avoidance of the statute has the burden of proving such facts." *Scanlon v. Kansas City*, 325 Mo. 125, 28 S.W.2d 84, 92 (1930). "As the party claiming the exemption, plaintiff had the burden of showing exemption from the operation of the statute of limitations." *Kellog v. Kellog*, 989 S.W.2d 681, 685 (Mo. App.1999).

As discussed in Chief Justice Wolff's opinion, plaintiff was asked "[D]id you know, always know that you had been molested and remembered it from the beginning without any assistance from others?" He answered "Yes." Even if plaintiff submits other evidence to contradict this testimony, such evidence cannot carry his burden to establish repressed memory.

> Where a party relies on the testimony of a single witness to prove a given issue, and the testimony of such witness is contradictory and conflicting, one version thereof tending to prove the issue, the other tending to disprove it, with no explanation of the contradiction, and no other fact or circumstance in the case tending to show which version of the evidence is true, no case is made, and the jury should not be permitted to speculate or guess which statement of the witness should be accepted.

*Adelsberger v. Sheehy*, 332 Mo. 954, 59 S.W.2d 644, 647 (1933). "A party may not avoid summary judgment by giving inconsistent testimony and then offering the inconsistencies into the record in order to demonstrate a genuine issue of material fact." *ITT Com. Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 388 (Mo. banc 1993). "This is not so much a matter of being bound by what his witness says as it is a failure of proof of an essential fact." *Draper v. Louisville & N.R. Co.*, 348 Mo. 886, 156 S.W.2d 626, 633–34 (banc 1941).

Having admitted that he knew at the time that he had been molested and that he "remembered it from the beginning without any assistance from others," plaintiff has precluded himself from proving the contrary. He cannot prove that his memory was repressed and he cannot avoid the running of the statute of limitations in this case. Further discovery can be of no value, but just needless expense to all of the parties.

One cannot read the record before us without great sympathy for Michael Powel. He tells of sexual abuse from family and teachers and then a life of promiscuity and pain. But the claims he makes arise from facts that occurred 27 years before the filing of his lawsuit. The evidence is stale; witnesses are lost. Any remedial value is too little and too late. Continuing this lawsuit serves neither the letter, nor the spirit of the law.

I would affirm the trial court's judgment.