# United States Court of Appeals

## For the Eighth Circuit

_____

No. 13-3363

_____

Paul Arthur Levy

*Plaintiff - Appellant*

v.

TD Ameritrade, Inc.

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Western District of Missouri - Springfield

_____

Submitted: April 30, 2014
Filed: June 3, 2014
[Unpublished]

_____

Before BYE, GRUENDER, and SHEPHERD, Circuit Judges.

_____

PER CURIAM.

Paul Levy appeals the district court's adverse rulings on his securities-law claims against TD Ameritrade (TDA). Finding that a genuine issue of material fact exists as to the accrual date of his state-law claim under Mo. Rev. Stat. § 400.8-508, we reverse in part.

Levy filed a petition in Missouri state court in January 2013, alleging that he had purchased shares of Bancorp International Group, Inc. (BCIT) through TDA, but that TDA had not provided him a stock certificate for his shares upon demand, in violation of the Securities Exchange Act (SEA). TDA removed the case to the district court, asserting federal question jurisdiction.

The parties' pleadings and exhibits demonstrate the following facts. On August 16, 2005, the Depository Trust Company (DTC) (a financial clearing house) informed traders that, beginning on August 11, 2005, it had suspended trading services on BCIT stock because unauthorized share certificates were on the market. Some transactions continued despite DTC's global lock, and on August 26, Levy purchased BCIT stock through TDA, and held the shares indirectly through TDA. In 2006, Levy asked TDA to provide him a stock certificate for his BCIT shares, and TDA informed him that it was unable to do so at that time because BCIT was not then printing certificates. In an April 2007 email, Levy told TDA that BCIT had sued him for allegedly buying counterfeit shares, asked TDA to contact BCIT to verify that he had purchased real, noncounterfeit shares, and reminded TDA that it owed him a fiduciary duty to purchase real shares on his behalf. In a January 2012 email, TDA responded to another request from Levy that it provide him a BCIT certificate, stating that it could not do so "due to a Global Lock on the security." Later in 2012, another TDA employee told Levy that it was unable to provide BCIT stock certificates because the stock was designated as globally locked.

Levy alleged that he learned in November 2011 that TDA's assertions that it could not provide him a certificate due to the global lock were misleading. He learned through his own investigation that BCIT certificates actually could be obtained and delivered despite the global lock, and that his shares were not affected by DTC's lock on trading services for BCIT stock because his shares were purchased after the lock went into effect. He alleged that, despite the lock and the risk of buying fake shares, TDA had traded BCIT stock after August 11, 2005 without using DTC

or any other clearing house; had bought shares on his behalf without requiring the seller to deliver the certificate; and falsely blamed its inability to provide him a certificate on DTC's lock. He alleged that he made twelve separate requests in 2012 and 2013 for a BCIT certificate, but TDA had not complied. He included as an exhibit a letter from BCIT's President stating that BCIT had issued TDA a certificate for 500 shares in March 2012.

The district court granted TDA's motion for summary judgment on Levy's SEA § 15(c)(3) and SEC Rule 15c3-3 claims, holding that the claims were time-barred, as they had accrued in April 2007 and the 5-year limitation period of Mo. Rev. Stat. § 516.120 applied. However, the court allowed Levy to amend his complaint to assert a state-law claim under Mo. Rev. Stat. § 400.8-508. In his amended complaint, Levy claimed that TDA violated section 8-508 when it denied his 2012 and 2013 requests for a certificate. The district court granted TDA's motion to dismiss, finding the state-law claim accrued in 2006 and thus was also time-barred.

After careful review, we conclude the district court erred in determining as a matter of law that Levy's state-law claim accrued in 2006. See Strawn v. Mo. State Bd. of Educ., 210 F.3d 954, 957 (8th Cir. 2000) (de novo review of statute-of-limitations analysis); Dupps v. Travelers Ins. Co., 80 F.3d 312, 313 (8th Cir. 1996) (de novo review of district court's interpretation of state law). Under Missouri law, a claim accrues, not when the wrong is done, but "when the evidence was such [as] to place a reasonably prudent person on notice of a potentially actionable injury." See Powel v. Chaminade Coll. Preparatory, Inc., 197 S.W.3d 576, 582 (Mo. 2006) (internal citation and quotation marks omitted); see also Mo. Rev. Stat. §§ 516.100 (cause of action accrues not when wrong is done, but when damage resulting therefrom is sustained and is capable of ascertainment), 516.120(1), (2) (5-year limitation period for action upon obligation, or liability created by statute). Levy's pleadings and exhibits suggest that he took reasonable steps to determine whether he had sustained an actionable injury, and that his injury was not ascertainable until

-3-

2011. TDA's 2006 response to Levy's request for a certificate implied that TDA's inability to act was temporary; and Levy maintained indirect holding of his BCIT shares, and he stayed informed of the investigation into BCIT's unauthorized stock certificates and whether investors were able to obtain BCIT certificates. In 2011, TDA still did not provide him a certificate, even though BCIT certificates actually could be obtained and delivered at that time; and he learned that his BCIT shares may not have actually been affected by the lock at all. His failure to file suit sooner was even more reasonable in light of his reliance on TDA's representations and their fiduciary relationship. See Powel, 197 S.W.3d at 583 (if defendant is professional expert, plaintiff has no duty to double check expert's work; claim accrues when layman knew or should have known of reason to question expert's work); Vogel v. A.G. Edwards & Sons, Inc., 801 S.W.2d 746, 751-52 (Mo. Ct. App. 1990) (stockbroker owes fiduciary duty to customer, even where account is nondiscretionary and customer, rather than broker, makes decision which stocks to trade). We conclude that a genuine issue of material fact exists as to when a reasonably prudent person would have been placed on notice of an actionable injury. See Powel, 197 S.W.3d at 585 (when different conclusions may be drawn from evidence as to whether statute of limitations has run, it is question of fact for jury to decide).

Accordingly, we reverse the dismissal of Levy's state-law claim under Mo. Rev. Stat. § 400.8-508, and we otherwise affirm. The case is remanded for further proceedings consistent with this opinion.

_____