

# In the Missouri Court of Appeals
# Eastern District

### DIVISION ONE

| | | |
|---|---|---|
| DANIEL MCCULLEN, | ) | No. ED110811 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| vs. | ) | 22SL-CC01555 |
| | ) | |
| MATTHEW P. O'GRADY, et al., | ) | Honorable David L. Vincent III |
| | ) | |
| Respondents. | ) | Filed:  April 11, 2023 |

Daniel McCullen ("Plaintiff") appeals the judgment granting motions to dismiss filed by Matthew P. O'Grady, O'Grady Law Firm, LLC, OnderLaw, LLC, and James D. O'Leary ("Defendants").  The trial court granted Defendants' motions to dismiss Plaintiff's petition alleging claims for legal malpractice (Counts I and II) on the grounds the claims are barred by the statute of limitations.  We reverse the trial court's judgment granting Defendants' motions to dismiss and remand for further proceedings consistent with this opinion.

### I.     BACKGROUND

Because this appeal involves a dismissal by the trial court on the grounds Plaintiff's claims are barred by the statute of limitations, we begin by setting out the general allegations of Plaintiff's petition.

In November 2013, Plaintiff hired Defendants for a personal injury claim.  Plaintiff is a layperson.  Defendant Matthew P. O'Grady ("O'Grady") and Defendant James D. O'Leary ("O'Leary") are licensed attorneys in the State of Missouri.  Defendant O'Grady Law Firm, LLC

("O'Grady Law") and Defendant OnderLaw, LLC ("OnderLaw") are Missouri law firms. During all times relevant to this case, Defendant O'Grady was an employee or agent of Defendant O'Grady Law or Defendant OnderLaw, and Defendant O'Leary was an employee or agent of Defendant OnderLaw or O'Leary, Shelton, Corrigan, Peterson, Dalton, and Quillian, LLC ("OSCPDQ Law").[1]

Plaintiff's petition alleges that in October 2006, Plaintiff was injured in a "low-speed accident," when Plaintiff was riding his Honda motorcycle and his "right foot was able to and did become entangled in the rear wheel, causing devastating and permanent injury to his leg and foot." Subsequently, in 2011, an action was filed by attorneys not involved in this case on behalf of Plaintiff and against authorized Honda dealer Shernaman Enterprises, Inc., Jo and Allen Shernaman,[2] and American Honda Motor Company, Inc. ("Honda") ("underlying 2011 action").[3]

Between November 2013 and July 2019, Defendants represented Plaintiff in complex litigation with numerous procedural steps, events, and decisions relating to the underlying 2011 action. The parties highlight several, notable events.

On November 15, 2013, Honda was dismissed from the underlying 2011 action. The dismissal occurred even though it would subsequently be revealed there was purportedly an agreement which provided Honda would indemnify its authorized dealer Shernaman Enterprises against loss and against liability for personal injury arising from a product defect. The petition does not allege the reason for Honda's dismissal from the underlying 2011 action. Subsequently,

---

[1] OSCPDQ Law is not a defendant in Counts I and II of Plaintiff's petition at issue in this appeal.
[2] We will refer to Shernaman Enterprises, Inc. as "Shernaman Enterprises," to Jo and Allen Shernaman as "the Shernamans," and to Shernaman Enterprises and the Shernamans collectively as "the Shernaman defendants."
[3] Plaintiff's petition does not raise any claims of legal malpractice against the attorneys who filed the underlying 2011 action on behalf of Plaintiff. Those attorneys ceased representation of Plaintiff at some point prior to Defendants' representation of Plaintiff beginning in November 2013, and the only claims of legal malpractice in Plaintiff's petition are against Defendants.

on January 22, 2014, the Shernaman defendants' insurer, Federated Mutual Insurance Company ("Federated"), filed a reservation of rights letter[4] in the underlying 2011 action. Defendants had notice of this letter.

On February 1, 2014, pursuant to the advice of Defendants, Plaintiff entered into a settlement agreement with the Shernaman defendants pursuant to section 537.065 RSMo 2016[5] ("2014 settlement agreement" or "settlement agreement"). The 2014 settlement agreement provides, *inter alia*, that Plaintiff agrees to not hold the Shernaman defendants personally liable, and, in exchange, the Shernaman defendants agree to not present a defense against Plaintiff's personal injury claim.

Plaintiff proceeded to trial with his personal injury claim in the underlying 2011 action, and, per the 2014 settlement agreement, no defense was presented by the Shernaman defendants. On or about April 24, 2014, a trial court entered a judgment in favor of Plaintiff and against the Shernaman defendants in the amount of $11,031,096 ("the approximate $11 million judgment").

On or about May 28, 2014, Defendants filed an equitable garnishment action on Plaintiff's behalf, to seek recovery of the approximate $11 million judgment against the Shernaman defendants' insurer, Federated ("2014 equitable garnishment action" or "equitable

---

[4] "A reservation of rights letter is a unilateral declaration from an insurance company to its insured that the company accepts the defense [in an action] but reserves its right to later deny coverage on certain specified grounds." *Pink v. Knoche*, 103 S.W.3d 221, 228 (Mo. App. W.D. 2003) (emphasis omitted); *see also Kinnaman-Carson v. Westport Ins. Corp.*, 283 S.W. 3d 761, 765 (Mo. banc 2009) ("[g]enerally, an insurance company can effect a proper reservation of rights when the company provides notice to an insured that its defense of an action should not be construed as a waiver of any policy defense and the insured accepts the defense of the action without protest and with full knowledge of the position of the insurance company of its right to assert non-liability") (citation and internal quotations omitted).

[5] All statutory references to section 537.065 in this opinion are to RSMo 2016 (effective from August 28, 1959 to August 27, 2017). Under this version of section 537.065, "an injured party and an insured/tort-feasor [may] enter an agreement which eliminates the insured's personal liability exposure;" "[the injured party and insured/tort-feasor] then continue to litigate the injured party's claim in circumstances in which the insured may have little incentive to vigorously defend, and might even be contractually prohibited from doing so;" and "[if the injured party obtains a substantial money judgment against the insured[,] the injured party then seeks to bind the insured's liability insurer to the outcome of the litigation, even though the insurer did not participate in, and might even have been unaware of, that litigation." *Knight by & Through Knight v. Knight*, 609 S.W.3d 813, 822 (Mo. App. W.D. 2020); *see also* section 537.065.

3

garnishment action"). Plaintiff subsequently had to take out a litigation loan in June 2014 "to keep from filing for bankruptcy and so that he could proceed with future litigation."

Between November 2015 and January 19, 2016, Defendants represented Plaintiff during settlement negotiations with Federated. During the negotiations, Defendants told Plaintiff Federated made a $480,000 offer, which Plaintiff wanted to accept, but Plaintiff ultimately did not accept the offer pursuant to Defendants' advice. Plaintiff also signed a blank sheet of paper which was presented to him by Defendants during the settlement negotiations. Plaintiff's petition also alleges Federated made an offer to settle with Plaintiff for $1 million during the negotiations, an offer which, (1) Defendants purportedly did not communicate to Plaintiff; (2) Plaintiff did not learn about until after negotiations had ended; and (3) Plaintiff alleges he would have accepted. No settlement agreement was ever reached between Plaintiff and Federated.

On January 20, 2016, Federated was granted summary judgment on Plaintiff's 2014 equitable garnishment action, "on the grounds [Federated] had been prejudiced in the [underlying] 2011 [a]ction by being unaware of the ongoing litigation and when [it] [was] apprised of the matter[,] being unable to mount a defense pursuant to the [2014 settlement] [a]greement" ("January 20, 2016 grant of summary judgment" or "grant of summary judgment"). Defendants then advised Plaintiff that an appeal of the January 20, 2016 grant of summary judgment lacked merit.

Defendants continued to represent Plaintiff up until July 2019. Between November 2016 and August 2017, Defendants allegedly "represented to Plaintiff that serious discussions were being had with outside counsel regarding methods of recovery on the [approximate $11 million] judgment." Additionally, on August 17, 2017, Defendant O'Leary left Defendant OnderLaw and started OSCPDQ Law, a Missouri law firm. O'Leary purportedly did not communicate this information to Plaintiff and continued to represent Plaintiff.

4

On or about December 14, 2018, after Plaintiff made several attempts to speak with Defendants, Defendant O'Leary and Plaintiff had "an intense meeting' at the office of OSCPDQ Law, during which "O'Leary expressed to Plaintiff of their perceived inability to collect on the [approximate $11 million] judgment after years of dragging out litigation and false indications of potential recovery avenues."

It is also alleged that on or about January 16, 2019, (1) Defendant O'Leary contacted Plaintiff and advised Plaintiff to allow Ryan Shernaman (the Shernamans' son who is a licensed attorney in Missouri) to represent Plaintiff in a collection action against Honda on behalf of the Shernaman defendants; (2) "Defendants . . . only allowed Plaintiff [four] hours to contemplate the possibility of another suit before stressing time was of the essence and a petition needed to be filed nearly immediately"; (3) "Plaintiff [ ] agreed to pursue Honda with Ryan Shernaman representing his interests against Honda on the condition that Defendants would still be zealously representing his interests"; (4) Defendants agreed with the aforementioned condition; and (5) a petition was filed by Ryan Shernaman on behalf of the Shernaman defendants and Plaintiff against Honda ("the 2019 case against Honda").  Finally, on July 10, 2019, the 2019 case against Honda was voluntarily dismissed, after Plaintiff was purportedly advised by Ryan Shernaman that the case "was outside of his area of practice and the case should be dismissed."

Plaintiff filed the petition at issue in the instant case on January 20, 2021, alleging two counts for legal malpractice.  Plaintiff's petition alleges that, as a result of Defendants' negligent legal representation of Plaintiff, Plaintiff never recovered any part of the approximate $11 million judgment, and Plaintiff suffered financial distress due to the costs of continued litigation.

5

Count I of Plaintiff's petition alleges Defendants negligently advised Plaintiff to enter into the purportedly deficient 2014 settlement agreement with the Shernaman defendants.[6] Count II of Plaintiffs' petition alleges Defendants negligently failed to investigate and identify Honda's purported duty to indemnify its authorized dealer Shernaman Enterprises.[7]

Defendants filed motions to dismiss Plaintiff's petition on the grounds Counts I and II are barred by the five-year statute of limitations applying to legal malpractice claims.[8] Plaintiff then filed suggestions in opposition to Defendants' motions to dismiss, and Defendants filed replies in support of their motions to dismiss.[9]

The trial court then entered a judgment granting Defendants' motions to dismiss and dismissing Counts I and II of Plaintiff's petition with prejudice. The court's judgment does not state the reasons it granted Defendants' motions to dismiss. This appeal followed.

## II.    DISCUSSION

Plaintiff raises one point on appeal alleging the trial court erred in granting Defendants' motions to dismiss asserting Plaintiff's petition is barred by the statute of limitations governing legal malpractice claims. For the reasons discussed in detail below, we agree.

---

[6] Count I specifically alleges, (1) the Shernaman defendants' insurer, Federated, was not provided notice of the ongoing underlying 2011 action; (2) Federated was not given an opportunity to defend against liability prior to the execution of the settlement agreement; (3) the settlement agreement, in part, limits Plaintiff's recovery of a favorable judgment to any insurance policies held by the Shernaman defendants; (4) the settlement agreement fails to expressly contemplate Honda's purported obligation to indemnify its authorized dealer Shernaman Enterprises; (5) the settlement agreement contains an "unfair" provision regarding how Plaintiff and the Shernaman defendants would share any recovery of a favorable judgment; and (6) the circumstances indicated Federated, the ultimate party envisioned to be held liable, intended to refute liability and expressly wished to present a defense.

[7] Count II specifically alleges, (1) an agreement provides Honda would indemnify its authorized dealer Shernaman Enterprises against loss and against liability for personal injury arising from a product defect; (2) Defendants were counsel of record before Honda was dismissed from the underlying 2011 action; (3) the terms of the 2014 settlement agreement did not expressly contemplate or reflect Plaintiff's ability to pursue an indemnification claim against Honda; and (4) Defendants' failure to consider pursuing a recovery against Honda severely limited Plaintiff's ability to collect against Honda on Shernaman Enterprises' behalf.

[8] *See Klemme v. Best*, 941 S.W.2d 493, 497 (Mo. banc 1997); *see also* section 516.120(4) RSMo 2016 (effective from August 28, 1939 to the present).

[9] To avoid unnecessary repetition, the parties' specific arguments in their pleadings will be set out below in Section II.B.1. of this opinion.

**A.     The Statute of Limitations for Legal Malpractice Claims and the Standard of Review**

"Actions for legal malpractice based on negligence are governed by the five-year statute of limitations in [section] 516.120(4) [RSMo]." *Klemme v. Best*, 941 S.W.2d 493, 497 (Mo. banc 1997); *see also* section 516.120(4) RSMo 2016.[10]

The trial court's grant of a motion to dismiss asserting a petition is barred by the statute of limitations is a question of law subject to *de novo* review. *Coin Acceptors, Inc. v. Haverstock, Garrett & Roberts LLP*, 405 S.W.3d 19, 27 (Mo. App. E.D. 2013); *Murray v. Fleischaker*, 949 S.W.2d 203, 206 (Mo. App. S.D. 1997). We liberally construe the petition, treating all of the plaintiff's factual allegations as true, and viewing the allegations favorably to the plaintiff. *Murray*, 949 S.W.2d at 205.

When it is not clear from a petition that a cause of action is barred by the statute of limitations, a motion to dismiss on that ground should not be granted. *Mental Health Associates, Inc. v. Carlson*, 835 S.W.2d 551, 552, 553 (Mo. App. E.D. 1992). Where, as in this case, the trial court does not state the basis for dismissal, we presume the court's decision was based on the grounds alleged in the defendant's motion to dismiss, and we will affirm if the dismissal is correct under any of the grounds stated in the motion. *Walters Bender Strohbehn & Vaughan, P.C. v. Mason*, 316 S.W.3d 475, 478 (Mo. App. W.D. 2010).

**B.     The Trial Court's Dismissal of Counts I and II Asserting Legal Malpractice Claims**

In this case, Plaintiff argues the trial court erred in granting Defendants' motions to dismiss Plaintiff's petition on the grounds Counts I and II are barred by the five-year statute of limitations applying to legal malpractice claims. Count I of Plaintiff's petition alleges Defendants negligently advised Plaintiff to enter into the purportedly deficient 2014 settlement

---

[10] This reference to RSMo 2016 and all further statutory references to RSMo 2016 are to versions of statutes effective from August 28, 1939 to the present.

agreement with the Shernaman defendants. Count II of Plaintiffs' petition alleges Defendants negligently failed to investigate and identify Honda's purported duty to indemnify its authorized dealer Shernaman Enterprises. While it is undisputed Defendants' alleged negligence occurred more than five years before Plaintiff's petition was filed, Plaintiff asserts a reasonable layperson would not have been put on notice of Defendants' potential negligence until a later time which falls within five years of the date Plaintiff's petition was filed.

### 1. The Trial Court's Judgment and the Parties' Arguments in Their Pleadings

The trial court's judgment in this case does not state the basis for its dismissal of Counts I and II. Accordingly, our Court presumes the trial court's decision was based on the grounds alleged in Defendants' motion to dismiss. *Mason*, 316 S.W.3d at 478.

Defendants' motions to dismiss argue Plaintiff's legal malpractice claims accrued at one of various points prior to the January 20, 2016 grant of summary judgment in favor of Federated: (1) in January 2014, when the Shernaman defendants' insurer, Federated, filed a reservation of rights letter in the underlying 2011 action; (2) in February 2014, when Plaintiff entered into the settlement agreement with the Shernaman defendants; (3) in June 2014, when Plaintiff had to take out a litigation loan to keep from filing for bankruptcy and so that he could proceed with future litigation; or (4) sometime between November 2015 and January 19, 2016, when Plaintiff was engaged in settlement negotiations with Federated, and specifically when, (a) Federated made two settlement offers to Plaintiff that Plaintiff claims he would have accepted but for Defendants' acts or omissions; or (b) when Plaintiff signed a blank sheet of paper which was presented to him by Defendants.

In contrast, Plaintiff's suggestions in opposition contend Plaintiff's petition was filed within the five-year statute of limitations because his claims in Counts I and II did not accrue until "at least January 20, 2016," i.e., the date of the grant of summary judgment in favor of

8

Federated (the Shernaman defendants' insurer) on Plaintiff's equitable garnishment action. When this ruling was entered, and despite Defendants' assertions to the contrary, all potential avenues of recovery of the approximate $11 million judgment had effectively closed in that Plaintiff could not recover from Federated because of the grant of summary judgment in its favor, Plaintiff could not recover from the Shernaman defendants personally pursuant to the terms of the 2014 settlement agreement, and Plaintiff could not recover from Honda because it was dismissed as a party in 2011.

### 2.    Relevant Law and Analysis

The statute of limitations for a legal malpractice claim begins to run when the cause of action accrues, meaning when the damage resulting from the alleged legal malpractice is "sustained and is capable of ascertainment." *Duvall v. Yungwirth*, 613 S.W.3d 71, 76-77 (Mo. App. W.D. 2020) (emphasis omitted) (quoting section 516.100 RSMo); *see also* section 516.100 RSMo 2016. "The test for accrual of a cause of action . . . is objective." *Duvall*, 613 S.W.3d at 77 (citing *Powel v. Chaminade College Preparatory, Inc.*, 197 S.W.3d 576, 584 (Mo. banc 2006)).

Generally, a claim for legal malpractice accrues when a reasonable person would have been put on notice that an injury and substantial damages resulting from alleged negligence may have occurred and would have undertaken to ascertain the extent of the damages. *Id*. Nevertheless, for purposes of determining when a legal malpractice claim accrues, a plaintiff has no obligation to check the action or inaction of an attorney he has hired for expert or professional services, "unless facts or circumstances which suggest an error are known by or are available to the plaintiff." *M & D Enterprises, Inc. v. Wolff*, 923 S.W.2d 389, 397 (Mo. App. S.D. 1996). Additionally, there is a distinction between "lay[person]/expert cases" where plaintiffs are unable

9

to ascertain their injuries without the help of experts and more simple cases where plaintiffs can ascertain their own injuries. *Jordan v. Willens*, 937 S.W.2d 291, 294 n.5 (Mo. App. W.D. 1996).

Accordingly, where, as in this case, a plaintiff is a layperson who hired defendants-attorneys for expert and professional services in complex litigation, a plaintiff's claim for legal malpractice accrues when a reasonable layperson would have been put on notice that an injury and substantial damages resulting from the defendants' alleged negligence may have occurred and would have undertaken to ascertain the extent of the damages. *See id*.; *Duvall*, 613 S.W.3d at 77; *Wolff*, 923 S.W.2d at 397; *see also Powel*, 197 S.W.3d at 584. In other words, a plaintiff's claim for legal malpractice accrues when an event occurs which would put a reasonable layperson on notice of the defendants' potential negligence. *See id*.

As explained in detail in Section I. of this opinion, Plaintiff's petition alleges Plaintiff, a layperson, hired Defendants to represent him in complex litigation from November 2013 to July 2019. Contrary to Defendants' assertions, we find that based on Plaintiff's allegations in his petition, a reasonable layperson such as Plaintiff would not have been put on notice of Defendants' potential negligence when Federated filed its reservation of rights letter, when Plaintiff entered into the settlement agreement with the Shernaman defendants, when Plaintiff had to take out a litigation loan, or at any point during settlement negotiations between Plaintiff and Federated. During these times, a reasonable layperson such as Plaintiff had no obligation to check the actions or inactions of Defendants, because there are no facts or circumstances alleged in Plaintiff's petition which suggest an error would have been known or available to a reasonable layperson in Plaintiff's position who was relying on Defendants' expert and professional advice to recover an approximate $11 million judgment in complex litigation. *See id*.; *see also Martin v. Crowley, Wade, and Milstead, Inc.*, 702 S.W.2d 57, 58-59 (Mo. banc 1985) (finding a

plaintiff-layperson "cannot be expected to double check every act (or failure to act) of his attorney") (citation omitted).

In support of Defendants' arguments that Plaintiff's legal malpractice claims accrued at some point prior to January 20, 2016, Defendants primarily rely on three cases: *Duvall*, 613 S.W.3d 71, *Brower v. Davidson, Deckert, Schutter & Glassman, P.C.*, 686 S.W.2d 1 (Mo. App. W.D. 1984), and *Zero Mfg. Co. v. Husch*, 743 S.W.2d 439 (Mo. App. E.D. 1987).

In *Duvall*, the Western District held, at the summary judgment stage, that a legal malpractice claim alleging a defendant-attorney negligently provided estate-planning services accrued when the plaintiffs admitted to "blam[ing]" defendant-attorney for collateral litigation being filed and plaintiffs hired new counsel to represent him in such litigation. 613 S.W.3d at 72-75, 80 n.4, 82. In *Brower*, the Western District held, at the summary judgment stage, that a legal malpractice claim alleging defendants-attorneys negligently failed to follow a specific section of the Internal Revenue Code accrued when an adverse administrative ruling from the Internal Revenue Service informed plaintiffs a tax deficiency occurred because defendants failed to follow the specific section of the Internal Revenue Code cited by plaintiffs in their legal malpractice claim. 686 S.W.2d at 1-4. In *Zero Mfg.*, our Court held, at the motion to dismiss stage, that a legal malpractice claim alleging defendants-attorneys caused damages arising from an untimely contract termination accrued when the defendants advised plaintiff it could terminate a contract upon giving thirty days' notice, and plaintiff had reason to know the advice may have been negligently given because opposing counsel told plaintiff a Wisconsin statute required ninety-days' notice. 743 S.W.2d at 440-42. We find Defendant's reliance on *Duvall*, *Brower*, and *Zero Mfg.* is misplaced because each of the cases are distinguishable.

In contrast to the summary judgment proceedings at issue in *Duvall* and *Brower*, this case involves the early motion to dismiss stage. Unlike the developed facts in *Duvall*, there are no

11

allegations in Plaintiff's petition that Plaintiff ever blamed or assessed fault to Defendants at any time during Defendants' representation of Plaintiff. Additionally, in contrast to the developed facts in *Brower*, there are no allegations in Plaintiff's petition that there was ever any adverse administrative ruling in this case, much less a ruling informing Plaintiff of Defendants' potential negligence. Finally, unlike the facts alleged in the petition in *Zero Mfg.*, there are no allegations in Plaintiff's petition in this case supporting a finding that a reasonable layperson in Plaintiff's position had any reason to know of any potential negligence on the part of Defendants at the times in the complex litigation suggested by Defendants (when Federated filed its reservation of rights letter, when Plaintiff entered into the settlement agreement pursuant to section 537.065 with the Shernaman defendants, when Plaintiff had to take out a litigation loan, or during Plaintiff's settlement negotiations with Federated).

Plaintiff's petition does not allege Plaintiff was even aware that Federated filed its reservation of rights letter, and, even if Plaintiff was somehow aware of the filing, there are no allegations in Plaintiff's petition supporting a finding that a reasonable layperson such as Plaintiff would understand the meaning of such a letter. Additionally, Plaintiff entering into a settlement agreement with the Shernaman defendants was the direct result of the reservation of rights letter being filed, entering into the settlement agreement was arguably good trial strategy on the part of Defendants, and a reasonable layperson such as Plaintiff would have no reason to be concerned with Defendants' representation of him at this stage of the proceedings. Furthermore, there is no suggestion in Plaintiff's petition that when Plaintiff had to take a litigation loan out to pay for ongoing litigation, (1) the attorney-client agreement between Defendants and Plaintiff had changed; (2) Plaintiff was advancing costs of litigation for the first time; or (3) that a reasonable layperson in the position of Plaintiff would have any other reason to be concerned with having to pay for such costs. Finally, during Defendants' representation of

12

Plaintiff in settlement negotiations with Federated, Defendants ultimately advised Plaintiff not to settle with Federated, which would demonstrate to a reasonable layperson such as Plaintiff that Defendants were confident in a strategy of pursuing a greater recovery than any amount of money Federated had offered to Plaintiff during the settlement negotiations.

Moreover, based on the allegations in Plaintiff's petition, we hold the earliest point in time Plaintiff's legal malpractice claims accrued was on January 20, 2016, when Federated was granted summary judgment on Plaintiff's 2014 equitable garnishment action "on the grounds [Federated] had been prejudiced in the [underlying] 2011 [a]ction by being unaware of the ongoing litigation and when [it] [was] apprised of the matter[,] being unable to mount a defense pursuant to the [2014 settlement] [a]greement." *See, e.g., Coin Acceptors*, 405 S.W.3d at 27-28 and *Murray*, 949 S.W.2d at 205-06 (holding a plaintiff's legal malpractice claim accrued when there was an adverse court ruling or judgment which put a reasonable person on notice of the defendant-attorney's potential negligence). When this January 20, 2016 adverse ruling was entered against Plaintiff, all potential avenues of recovery of the approximate $11 million judgment had effectively closed in that Plaintiff could not recover from Federated because of the grant of summary judgment in its favor, Plaintiff could not recover from the Shernaman defendants personally pursuant to the terms of the 2014 settlement agreement, and Plaintiff could not recover from Honda because it was dismissed as a party in 2011.

Further, the grant of summary judgment triggered the occurrence of alleged events in Defendants' representation of Plaintiff which a reasonable layperson in the position of Plaintiff would find concerning. These alleged events include: Defendants advising Plaintiff an appeal of the grant of summary judgment lacked merit; Plaintiff making several unsuccessful attempts to speak with Defendants; a meeting between Plaintiff and Defendant O'Leary at a new law office (OSCPDQ Law) where O'Leary essentially told Plaintiff he no longer had a path to recover the

13

approximate $11 million judgment; Defendants advising Plaintiff to hire a new lawyer (the son of underlying-defendants the Shernamans) and pressuring Plaintiff to make the representation decision within a four-hour window; and Plaintiff ultimately being told by the Shernamans' son that the case "was outside of his area of practice and the case should be dismissed."

Based on the foregoing, we hold as a matter of law that the trial court's January 20, 2016 grant of summary judgment on Plaintiff's 2014 equitable garnishment action was the earliest point in time a reasonable layperson involved in complex litigation, (1) would have been put on notice that an injury and substantial damages may have occurred (the inability to collect the approximate $11 million judgment in the underlying 2011 action); (2) would have undertaken to ascertain the extent of the damages; and (3) would have been put on notice that such an injury and substantial damages resulted from Defendants' alleged negligence (Defendants advising Plaintiff to enter into the purportedly deficient 2014 settlement agreement as alleged in Count I and Defendants failing to investigate and identify Honda's alleged duty to indemnify as alleged in Count II). *See Duvall*, 613 S.W.3d at 77; *Jordan*, 937 S.W.2d at 294 n.5; *Wolff*, 923 S.W.2d at 397; *see also Powel*, 197 S.W.3d at 584. Therefore, Plaintiff's petition filed on January 20, 2021 was filed within the five-year statute of limitations, and the trial court erred in dismissing Counts I and II. Plaintiff's sole point on appeal is granted.

### III. CONCLUSION

We reverse the trial court's judgment dismissing Counts I and II of Plaintiff's petition with prejudice and remand for further proceedings consistent with this opinion.

_____
ROBERT M. CLAYTON III, Judge

Angela T. Quigless, P.J., and
Sherri B. Sullivan, J., concur.

14